**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS -EASTERN DIVISION**

| | | |
|---|---|---|
| **KATHLEEN HUGHES, IMOGEN OLIVER and VIRGINIA SHERWOOD,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case no. 15 CV 5546** |
| **SCARLETT'S G.P., INC. d/b/a PINK MONKEY, CLINTON ENTERTAINMENT MANAGEMENT, INC., LLC d/b/a PINK MONKEY, NEW YORK STRIP d/b/a PINK MONKEY, SCARLETT'S L.P. and MARK VAJDIK,** | ) ) ) ) ) ) ) ) ) | **Hon. Amy J. St. Eve** **Mag. Judge Sheila Finnegan** |
| **Defendants.** | ) ) | |

**SCARLETT'S G.P. INC. AND MARK VAJDIK'S**
**MOTION TO DISMISS PURSUANT TO SECTION 12(b)(6)**

Scarlett's G.P. Inc. and Mark Vajdik, by their attorney, move this court pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint. In support

of this motion, they state as follows:

1.  This purports to be an action filed by three dancers against five defendants alleging

violation of the Fair Labor Standards Act, 29 U.S.C. sec. 201 et seq. ("FLSA") (Count I),

the Illinois Minimum Wage Law ("IMWL") (Count II), the Illinois Wage Payment and

Collection Act ("IWPCA") (Count III), the Racketeer Influence and Corruption Act, 18

U.S.C. 1964 ("RICO") (Count IV), and retaliatory discharge in violation of a combination

of state and federal statutes (Count V).   The thrust of the Complaint is that the plaintiffs

were misclassified as independent contractors rather than employees and therefore

allegedly were not properly compensated.

Case: 1:15-cv-05546 Document #: 9 Filed: 09/08/15 Page 2 of 10 PageID #:68

2.   The Complaint should be dismissed pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure for the following reasons. Count I (FLSA) does not have sufficient allegations regarding commerce, does not distinguish among defendants, and does not allege facts showing control over the terms of plaintiffs' employment. Moreover, the allegations in Count I show that the plaintiffs were compensated more than what is required under the FLSA.  The RICO Count (Count IV) fails to plead predicate acts and does not meet the specificity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

3.   The claim under IMWL (Count II) should be dismissed for the same reasons that the FLSA count fails. Count III, for violation of the IWPCA, is deficient because it does not allege that the defendants failed to comply with the compensation agreements with the plaintiffs.  Count V fails to state a cause of action for retaliatory discharge because the plaintiff Virginia Sherwood avers that she voluntarily left her position as a dancer with the defendants, and then offered to come back only if she was compensated and treated differently than the other dancers. There is no law that provides a party who files a claim under FLSA must be treated better than her colleagues.

4.   Accordingly the entire complaint should be dismissed.

## I
## FLSA
### No allegation of commerce

5.   It is well established that to plead a cause of action for violation of FLSA, the plaintiff must plead that she is engaged in commerce or that her employer is engaged in commerce. *See Torres v. Pallets 4 Less, Inc.*, No. 14 CV 4219, 2015 WL 920782, at *2 (N.D. Ill. Mar. 2, 2015) ("In order to properly plead an FLSA claim, a plaintiff must plead either that she is an employee who is engaged in commerce (individual-based

Page **2** of **10**

coverage) or that her employer is an enterprise engaged in commerce (enterprise-based coverage).)"

6.   In the instant case, the plaintiffs have not alleged whether they are relying on individual-based coverage or enterprise-based coverage to establish commerce but in any event have not pleaded any facts showing coverage under either basis.

### Insufficient allegations regarding employer

7.   The allegations as to the identity of plaintiffs' employer are confusing and conclusory. The plaintiffs make no effort to distinguish among the defendants. Sometimes the Complaint refers to the defendant (singular) and sometimes to defendants (plural), without identifying the specific defendant or defendants. (e.g., Complaint, pars. 10, 15-17, 24).

8.   The plaintiffs allege that Mark Vajdik is president of Scarlett's G.P. Inc and a general partner of Scarlett's L.P. Exhibit B to the Complaint indicates that Scarlett's L.P. compensated one of the plaintiffs.

9.   Nowhere in the Complaint, however, do the plaintiffs allege which defendant was their employer. The Complaint avers that the plaintiffs signed independent contractor agreements, but do specify which of the defendants were parties to those agreements. The plaintiffs merely allege, in conclusory fashion, that the defendants controlled the club. (Complaint, par. 10).

10. It is improper to make allegations against a group of defendants without distinguishing who did what. *See Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 865 (N.D. Ill. 2009) (court dismissed pleading that failed to distinguish among 48 defendants);

*Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996) (complaint dismissed where complaint failed to separate each alleged act by each defendant).

11. The pleading requirement to distinguish among defendants is directly applicable to claims under the FLSA. *See Berger v. PIKR, Ltd.*, No. 14 C 8543, 2015 WL 2208200, at *3 (N.D. Ill. May 8, 2015) ("The plaintiffs' group pleading does not provide each defendant with adequate notice of the claims against it. So, the plaintiffs' claims against PIKR, PBS, and PRL are dismissed without prejudice.")

12. Moreover, the owner of the employer is not liable under FLSA unless the owner exercises day-to-day control over the plaintiffs. *See Abarca v. Manheim Servs. Corp.*, No. 05 C 3873, 2006 WL 850893, at *4 (N.D. Ill. Mar. 24, 2006) ("a parent corporation or corporate owner is considered an "employer" under FLSA only where it exercises day-to-day control over the employees at issue. *See Hadad v. World Fuel Servs., Inc.*, No. 13 C 3802, 2013 WL 6498894, at *2 (N.D. Ill. Dec. 11, 2013) ("The word 'employer' is defined broadly enough in the FLSA . . . to permit naming another employee rather than the employer as defendant, provided the defendant had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation.")

13. In the instant case, the only specific allegation regarding who was responsible for supervision of the plaintiffs and the employment policies is in paragraph 9 in which the plaintiffs allege that the defendants delegated the senior management functions to the Club's mangers, including functions that affect employment status, classification, and treatment of dancers, including the plaintiffs. (Complaint par. 9). This allegation negates that the unspecified owner of the unidentified employer was involved in the day-to-day supervision of the plaintiffs.

14. Moreover, allegations that the defendants controlled the club are conclusions and not factual allegations. *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal–Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in reviewing a motion to dismiss."); *Adedapoidle-Tyehimba v. Crunch, LLC*, No. 13-CV-00225-WHO, 2013 WL 4082137, at *5 (N.D. Cal. Aug. 9, 2013) ("Bare allegations that a defendant managed or oversaw a direct employer's operations are likewise insufficient.")

**Insufficient allegations of underpayment**

15. The admissions in the Complaint negate plaintiffs' claim of a violation of FLSA. The plaintiffs admit that they were directly compensated by the defendants for dances performed in the VIP room. (Complaint, par. 21). In paragraph 22 of the Complaint, the plaintiffs aver that the full amount the plaintiffs were given by patrons in relation to the dances she performs are taken into the defendants' gross receipts. The Complaint further admits that the fees charged patrons are a fixed fee set by the defendants. (Complaint, pars. 21, 30; Exhibit A).

16. The plaintiffs claim that the amount they are paid for dances in the VIP room are tips, however, they admit that the customers did not pay them directly and that the VIP fees were taken into the defendants' gross receipts and then paid to the plaintiffs. Accordingly, the amounts paid to the plaintiffs count toward their wages. *See Mechmet v. Four Seasons Hotels, Ltd.*, 639 F. Supp. 330, 338 (N.D. Ill. 1986) *aff'd*, 825 F.2d 1173 (7th Cir. 1987). There, the court distinguished a service charge from a tip:

[I]t is clear that the service charge is not a gratuity. 29 C.F.R. § 531.52 indicates that the Unions' characterization of the service charge as a gratuity is incorrect. Specifically, Section 531.52 provides:

A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer. Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted in determining whether he is a "tipped employee" within the meaning of the Act and in applying the provisions of section 3(m) which govern wage credits for tips[.]"

Further, Section 531.55(a) of the federal regulations also explicitly states that a service charge such as the one in this case is not a gratuity.

639 F. Supp. at 338. Specifically, Section 531.55(a) of the Code of Federal Regulations

provides:

(a) compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t). Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.

*(b) As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the Act.*

29 C.F.R. 531.52 (1984) (emphasis added).

17. In the instant case, the plaintiffs admit that they were paid significantly more than minimum wage. The plaintiffs admit that they did not take into account the monies they received for dances in the VIP room in calculating compensation. According to Exhibit

D to the Complaint, one plaintiff, Virginia Sherwood, worked an average of 3.5 nights a week for a total of approximately 20 hours per week. Minimum wage is $8.25 per hour (according to the plaintiffs on Exhibit D). Therefore, Ms. Sherwood should have received approximately $200 for the week. Instead, she received approximately $600 per shift just for VIP dances. Therefore, at three shifts per week, she averaged well in excess of $1800 per week. Hence, no violation of the FLSA.

**II**
**RICO COUNT NOT SUFFICIENTLY PLEAD**

18. In Count IV the plaintiffs purport to bring an action for RICO under 18 U.S.C. 1962, without specifying the subparagraph. The sole RICO allegation is paragraph 118 of the Complaint:

> 118. Defendants conduct and the conduct of all members of the Pink Monkey enterprise injured Plaintiffs by failing to pay their regular statutory wages for all hours worked and confiscating portions of her tips and for other wrongful conduct as described hereinbefore indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity by devising a Scheme to obtain Plaintiffs' property by means of falsely and fraudulently classifying her as an independent contractor rather than as an employee, and issuing false 1099 forms to the Internal Revenue Service.

19. This allegation is prima facie defective and insufficient to support a RICO claim.

20. Rule 9(b) of the Federal Rules of Civil Procedure requires fraud to be plead with particularity. In *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 792 (N.D. Ill. 1997), the court said:

> The Seventh Circuit has repeatedly instructed that Rule 9(b) requires the plaintiff to plead in detail the "who, what, when, where, and how" of the circumstances constituting the fraud. [Citation omitted.] That is, the plaintiff must plead in detail the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.

983 F. Supp. at 792. In case of multiple defendants, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Intern., Inc.* 156 F.3d 721, 726 (7th Cir. 1998). Similarly, in multiple plaintiff cases, "each plaintiff must allege that he or she was the victim of specific materially false statements in relation to the transaction in which he or she was involved." *Brown v. North Cent. F.S., Inc.*, 173 F.R.D. 658, 665-666 (N.D. Iowa 1997).

21. The Complaint in the instant case falls far short of these requirements. The plaintiffs do not allege fraud with specificity, do not distinguish what representations were made to each of them, and do not distinguish which defendants made the misrepresentations.

22. Equally significant, the plaintiffs have failed to allege predicate acts required under a RICO claim. Violation of the FLSA is not a predicate act. *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 262-63 (W.D.N.Y. 2010) ("Finally, Plaintiffs have not alleged that the harm they suffered was as a consequence of the predicate acts listed in the RICO statute. Rather, the harm they assert is as a result of alleged violations of FLSA. Consequently, for all the reasons above, Plaintiffs' RICO claim must be dismissed.")

### III
### STATE LAW CLAIMS

23. In Count II, the plaintiff alleges a violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/3(d). The same analysis of the FLSA generally applies to the IMWL. *Knapp v. City of Markham*, No. 10 C 03450, 2011 WL 3489788, at *8 (N.D. Ill. Aug. 9, 2011) ("Claims brought under the FLSA and IMWL are evaluated using the same general analysis."); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068,

1074 (N.D. Ill. 2005) *amended,* No. 03 C 9009, 2005 WL 2649190 (N.D. Ill. Oct. 11, 2005) ("The IMWL parallels the FLSA, and thus the same analysis applies to claims made under the IMWL and FLSA.")

24. Therefore, for the same reasons that Count I of the Complaint fails to allege a claim under the FLSA (excluding the argument about failing to allege commerce), Count II under the IMWL should also be dismissed.

25. The plaintiff attempts to allege a violation of the Illinois Wage Payment and Collection Act ("IWPCA") in Count III. 820 ILCS 115/2. The IWPCA merely requires an employer to comply with his agreement with the employee. *See Enger v. Chicago Carriage Cab Co.*, 77 F. Supp. 3d 712, 716-17 (N.D. Ill. 2014). There, the court stated:

> But while Plaintiffs have successfully alleged an agreement with Defendants, they still fail to state a claim under the IWPCA because the agreement did not *717 provide for the payment of any wages to Plaintiffs by Defendants. The IWPCA 'does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement.' *Wharton,* 912 F.Supp.2d at 658. Here, Plaintiffs do not plead that the relevant agreement provided for payment of any sort by Defendants. Thus, their claims regarding a lack of minimum wage or overtime pay must fail under the IWPCA.

77 F. Supp. 3d 712 at 716-17.

26. In the instant case, the plaintiffs do not seek to enforce their independent contractor agreement or their other terms of agreement. Rather the plaintiffs are essentially seeking the same relief under the IWPCA that they believe they are entitled to under the FLSA and the IMWL. This count should be dismissed because as shown above the plaintiffs are not entitled to any monies under the FLSA or IMWL and they had no agreement to receive such funds.

27. Count V is for retaliatory discharge solely on behalf of one plaintiff, Virginia Sherwood. The exhibits to the Complaint show that Sherwood voluntarily and

intentionally ceased working at least as of February 5, 2015 and then offered only to come back under terms that were different and more favorable to her than other employees. (Exhibits D and E).

28. Although it may be a violation of state and federal law to take adverse action against someone asserting their rights under the FLSA and similar state statutes, there is nothing in the law that requires an employer to treat such an employee more favorably than other employees.

29. There are no allegations in the complaint that the defendants terminated Sherwood's employment or that Sherwood offered to return to work on the same terms that were applied to other dancers.

30. Accordingly, as a matter of law, there can be no claim for discriminatory conduct against Sherwood.

WHEREFORE, the defendants, Scarlett's G.P. Inc. and Mark Vajdik, move this court to dismiss the complaint and award these defendants their costs of suit.

Marty J. Schwartz                               Scarlett's G.P. Inc. and Mark Vajdik
Schain Banks Kenny & Schwartz
70 W. Madison Street                            By:_____/s/Marty J. Schwartz_____
Suite 5300                                          One of their attorneys
Chicago, IL 60602
Tel. 312.345.5700
ARDC No. 03124462