**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KATHLEEN HUGHES, IMOGEN OLIVER, and VIRGINIA SHERWOOD, Plaintiffs, | ) | No. 15 CV 10 5546 |
| vs. | ) | Judge St. Eve |
| SCARLETT'S G.P., INC. d/b/a PINK MONKEY, CLINTON ENTERTAINMENT MANAGEMENT, INC., LLC, d/b/a LLC, d/b/a PINK MONKEY, NEW YORK STRIP d/b/a PINK MONKEY, SCARLETT'S L.P. and MARK VAJDIK, Defendants. | ) | Mag. Judge Finnegan |

**PLAINTIFFS RESPONSE TO MOTION OF DEFENDANTS VAJDIK AND SCARLETT'S G.P. INC MOTION TO DISMISS**

Plaintiffs Kathleen Hughes, Imogen Oliver and Virginia Sherwood, through their attorney Gregory X. Gorman Answer the

Motion of Defendants Mark Vajdik and Scarlett's G.P. Inc. as follows:

Plaintiffs are former dancers at an adult entertainment business (the "Club") known as the Pink Monkey owned and operated by the named defendants in Chicago. The Plaintiffs worked at the Club from approximately August 2012 to 2015. (Complaint ¶4)

The main basis for the complaint is that during the time Plaintiffs worked at the Pink Monkey they were misclassified as independent contractors and were not paid any wages, nor provided other benefits and rights to which they were entitled to as employees, and that they were

required to split tip

income with their employer, the Pink Monkey. (Complaint ¶4)

The Complaint consists of five counts: Count I alleging violations of the Fair Labor Standards Act ("FLSA"); Count II alleging violations of the Illinois Minimum Wage Law ("IMWL");

Count III alleging violations of the Illinois Wage Payment and Collection Act ("IWPCA"); Count IV alleging RICO violations, and; Count V alleging Retaliatory Discharge of the Plaintiff Virginia Sherwood.

Defendants' Motion to Dismiss seeks dismissal of Counts I, II, III and V under FRPC 12 (b) (6) and Count IV (the RICO Count) under FRPC 9 (b).

Plaintiff will discuss the merits of each Count separately below.

**Violation of FLSA**

Defendant claims three deficiencies with respect to Count I:

**I. No allegation of Commerce**

The complaint alleges that the Club is operated as a business establishment where live semi-nude dance entertainment is presented to adult members of the general public. (Complaint ¶9) During the relevant time period hundreds of different women worked there. The Club averages 20-40 dancers working on any given day. (Complaint ¶14) The Club customers were allowed to use credit cards if they wanted. (Complaint ¶21, ¶30 (F) In support of their argument that the allegation of "commerce" is inadequate, Defendants cite only one case, *Torres v. Pallets*

*4 less, Inc.* No. 14 CV 4219, 2015 WL 920782 (N.D. Ill. Mar. 2, 2015) However, in *Torres*, Judge Ellis actually rejected the Defendants claim that Plaintiff failed to adequately plea an FSLA claim, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged".

The requirement that the Plaintiff pleads that Defendant is engaged in "commerce" does not require the use of magic words.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face", *Iqbal,* citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555.

Black's Law Dictionary defines Commerce as the exchange of "goods and services". Black's Law Dictionary 7th Ed. A Complaint that alleges a business open to the general public, employing up to 40 employees at a time (plus bouncers, DJs, managers, house moms, etc.), as well as the acceptance and processing of credit cards more than plausibly alleges "commerce" sufficiently to state a cause of action. "A claim has facial plausibility when the plaintiff **pleads factual content** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 670.

The only reasonable and plausible inference based on the use and processing of credit cards is that Defendants are engaged in not just commerce, but interstate commerce. Indeed, to argue that the Defendants are **not** engaged in both commerce and interstate commerce is an argument which would require an unreasonable, implausible inference.

There are many cases involving exotic dancers suing under FLSA on the issue of being

employees versus independent contractors, applying FLSA. The courts have consistently held in favor of the dancers and against the club owners. *Reich v. Circle C Investments,* 998 F. 2d 324 (5th Cir. 1993); *Reich v. Priba Corp.,* 890 F. Supp. 586 (N. D. Texas, 1995) *Thompson v. Linda and A Inc.,* 779 F. Supp. 2d a39 (D.D.C. 2011); *Harrell v. Diamond A Entertainment, Inc.,* 992 F. Supp. 1343 (M.D. Fla 1997) *Clincy v. Galari South Enterprises, Inc.,* 808 F. Supp. 2d 1326 (N. D. Ga 2011). Plaintiff has not found a single case ruling in favor of the owners and against the dancers on the applicability of FLSA in these cases.

**II. Insufficient allegations regarding employer**

Defendants' next attack on the FSLA Complaint is that Plaintiffs allegations as to the identity of Plaintiffs' employers are confusing and conclusory. (Motion to Dismiss p.3)

The Plaintiffs have alleged the following: The Pink Monkey is wholly owned by Defendants Scarlett's G. P., Clinton Entertainment Management Inc., and Scarlett's L.P. all of which are doing business as the Pink Monkey. Defendant Vajdik is the President of Scarlett's G.P., and a general partner with actual authority to act in the ordinary course of business and activity on behalf of Scarlett's L.P. The Defendants maintain ownership, recruitment, management, and/or operational interest in the Club. (Complaint ¶4 - 9) The Defendants manage all aspects of the business operation including attracting investors, establishing the hours of operation, etc. (Complaint ¶ 47)

Section 203 (r) of the FLSA defines "enterprise" to include "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose," even if performed by more than one establishment or organizational unit.

Plaintiffs were the employees of Defendants and Defendants set the rules and conditions for

working at the Pink Monkey. (Complaint ¶ 78-80)Defendants together operated as an enterprise through a pattern of racketeering activity by devising a scheme to falsely and fraudulently obtain Plaintiffs' rightful money. (Complaint ¶ 118)

The ownership and control of the Pink Monkey is indeed a confusing Gordian knot, Plaintiffs did not create that knot, Defendants did. All the Plaintiffs knew was that they worked for the Pink Monkey. The handbook (Exhibit A of the Complaint) identifies only the Pink Monkey as the employer. There is no notice to the dancers that there are entities called Scarlett's GP Inc., Clinton Entertainment Management, Inc., Scarlett's LP, or even Mark Vajdik owning the Pink Monkey. Much of the unraveling of the confusing ownership will have to be done through discovery. Defendants complain that the complaint fails to distinguish among defendants and to advise them with adequate notice of the claims against it. In fact, the complaint alleges that all defendants were engaged in all of complained of conduct and legal violations and all (except Vajdik) were doing business as the Pink Monkey.

As a part of this section of the Motion the argument is made that "The owner of the employer is not liable under FLSA unless the owner exercises day-to-day control over the plaintiffs." (Motion P. 4) This misstates FLSA. The remedial goals of FLSA require courts to define "employer" more broadly than the traditional common law application. (*McLaughlin v. Seafood, Inc.*, 867 F. 2d 875, 877 (5th Cir. 1989). Section 3 (d) of FLSA defines "employer" as "any person acting **directly or indirectly** in the interest of an employer in relation to an employee." 29 U.S.C. §203(d) (emphasis added). The Complaint alleges Vajdik is President of Scarlett's G.P., and a general partner of Scarlett's L. P. With actual authority to act in the course of business and activity on behalf of Scarlett's L.P. It is Scarlett's L.P. that issued the false and

fraudulent Form 1099s to Plaintiffs. (Complaint ¶118 and Exhibit B)

The Defendants next argument in this section of the Motion is that Plaintiffs' "allegations that the Defendant's controlled the Club are conclusions and not factual allegations." (Motion ¶ 14)

It is hard to conceive that a more factually presented Complaint regarding the issue of control could ever be drafted. Allegations of Defendants control over the workplace run throughout the Complaint, including the allegations of ¶30, which detail five pages of control (p. 10-14) and Exhibit A, in which Pink Monkey itself sets forth the rules controlling the work of the dancers. The handbook (Exhibit A of the Complaint, at p. 7) includes "A friendly message from the **owners**" (emphasis added), which includes this warning from the "owners". "If you have a problem with a specific coworker, bring it to a manager's attention IMMEDIATELY before it escalates and possibly causes one or both parties to be terminated." Again, this friendly reminder, comes not from a manager but from the "owners". (Interestingly, the friendly message also characterizes the owners as "employers" and the dancers as "employees" at page 7. There is simply no merit to this argument on behalf of Defendants.

**III. Insufficient allegations of underpayment**

Relevant to Plaintiffs complaints that they were underpaid, Plaintiffs have alleged, in part, the following:

Plaintiffs are "tipped employees" as they are in engaged in an occupation in which they customarily and regularly receive tips as classified by FLSA, IWPCA and IMWL. Tips were the only income they got from working at the Club. (Complaint 23-24) While working at the Club dancers, like Plaintiffs, perform dances and entertain in the VIP room for tips. Defendants confiscated part of these tips by requiring tip-outs, to be paid to the club manager, the confiscated

money being used to pay other employees and the balance kept by Defendants. (Complaint ¶ 35, 41). Plaintiffs never received any wages or compensation from Defendants. (Complaint ¶ 21)

FLSA defines "tipped employee" as any employee engaged in an occupation in which (s)he customarily and regularly receives more than $30 a month in tips 29 U.S.C. 203 (t).

**RICO COUNT NOT SUFFICIENTLY PLEAD**

Defendants' motion to dismiss Count IV, the RICO Count, is brought under FRCP 9 (b), which requires fraud be plead with particularity. Defendant incorrectly avers that, "The sole RICO allegation is paragraph 118 of the Complaint". This is, of course, incorrect. Paragraph 116 of the RICO Complaint incorporates all of the preceding paragraphs of the Complaint as allegations of Count IV. It is the preceding paragraphs which are incorporated that form the factual basis of the RICO Count. With respect to those paragraphs, as is relevant to this motion, Plaintiffs have alleged (in part) as follows:

Defendants employed Plaintiffs and managed, directed and controlled the operations of the Club and dictated the common employment policies including: 1.) Misclassifying Plaintiffs as independent contractors, as opposed to employees; requiring that Plaintiffs turn over their tips to the Club to pay its other employees, including Club managers, Doormen, floor hosts, house moms DJs, and employees who do not usually receive tips; by paying "tip outs" to other employees; not to pay dancers (Plaintiffs) any money; to demand and take improper and unlawful payments from Plaintiffs; to adopt and implement employment policies which violate the FLSA, IWPCA and IMWL; to threaten retaliation against any dancer (Plaintiffs) attempting to assert her statutory rights to be recognized as an employee; (Complaint ¶ 10) That Defendants'

misclassification of Plaintiffs as independent contractors was designed to deny their right to receive minimum wages, to demand and retain the tips given to them by their customers, to enhance Defendants' profits, and to deny Plaintiffs the protections given to them under FLSA, IWPCA and IMWL. (Complaint ¶ 24) The misclassification was willful. (Complaint ¶ 25) Defendants threaten to penalize and discriminate against dancers (Plaintiffs) if they assert their FLSA, IWPCA or IMWL rights, such as through termination. (Complaint ¶ 28) Defendants knew or should have known that the misclassifications were unlawful, and were on an actual or constructive notice of same. (Complaint ¶ 25, 68) That the Defendant members of the Pink Monkey enterprise engaged in a pattern of racketeering activity by devising a Scheme to obtain Plaintiffs' property by means of falsely and fraudulently classifying them as independent contractors and issuing false 1099 forms to the IRS. (Complaint ¶ 118, Exhibit B)

RICO allows a private cause of action for any person injured in his business or property in violation of certain enumerated RICO violations. 18 U.S.C. §1962 and 1964. The §1962 RICO violations relevant to action include:

The receipt of income derived from a pattern of collection of an unlawful debt for the establishment or operation of any enterprise which is engaged in interstate commerce. 18 U.S.C. §1962 (a) and (b). Racketeering Activity is also defined as any act involving mail fraud (mailing and filing of false 1099 forms) "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, conduct of such enterprise's affairs through a pattern of racketeering activity <u>or</u> collection of unlawful debt." 18 U.S.C. 1962 (c). Defendants were engaged in interstate commerce through their use of credit cards to further their scheme.

Plaintiffs have sufficiently alleged facts to support a pattern of for collection of unlawful debt and mail fraud.

## STATE LAW CLAIMS

### A. IWPCA Claim (p. 9, ¶24 - 26 of Motion to Dismiss)

Defendants argue that the IWPCA "merely requires an employer comply with his agreement with the employee." (¶ 25 of Motion). Of course, IWPCA demands much more of an employer. For one obvious thing IWPCA requires the employer to pay the employee! And payment is to be made on a regular basis, at least semi-monthly. 820 ILCS 115/3. The Complaint's allegations are that the employer has never paid the Plaintiffs at all. (Complaint ¶107, 110, 112). Plaintiffs have adequately plead their IWPCA claim.

### B. RETALIATORY DISCHARGE (p. 9, ¶27, 29 of Motion to Dismiss)

The Complaint alleges that Plaintiff Sherwood, advised the Club in writing, that she would continue to work with the club three nights a week as an employee, but not as an independent contractor, a protected exercise of her rights under FLSA, IMWL, and IWPCA. In response, Defendants informed Sherwood that she was fired, retroactive to October 27, 2014, "having abandoned her obligations to the Company".[1] The complaint further alleges that the proferred reason for her discharge was a complete invention, a pretext, and the real reason for her firing was simply retaliation for attempting to exercise her right under FLSA, IWPCA and IMWA. (Complaint ¶ 119 – 124, Exhibits to Complaint D through K).

---

[1] Defendant did not state what obligations it chose supposed "independent contractor" may have abandoned or why the arbitrary date of October 27, 2014. In fact, Sherwood continued to work at the club until January, 2015.

Defendants' Motion argues that Sherwood offered to return to work as an "employee", and Sherwood was not entitled to be treated more favorably than other "employees". It is an ironic argument in that it is Defendants' main argument that none of the dancers were employees.

Sherwood was fired for no reason other than that she attempted to exercise her protected rights under FLSA, IWPCA and IMWA. Each law prohibits such retaliation. In fact, Plaintiff does not have to even be right in her belief that she is an employee and not an independent contractor. IWPCA prohibits firing the employee for merely making a complaint of violation of the Act. "Any employer, or any agent of an employer, who discharges or in any other manner discriminates against any employee because that employee has made a complaint to his employer...is guilty of a Class C misdemeanor. An employee who has been unlawfully retaliated against shall be entitled to recover" in a civil action. 820 ILCS 115/13 (c). IMWA has a similar provision 820 ILCS 105 /118 (c), as does FLSA 29 U.S.C. 218(c)(a). Sherwood has adequately plead a cause of retaliatory. Whether or not she was fired because of her exercise of her employment rights or because "she abandoned her duties" is more properly a question of fact, at best.

WHEREFORE, Plaintiffs pray that the motion to dismiss brought by Defendants Scarlett's GP Inc. and Mark Vajdik be denied. The event the court determines any part of the complaint is deficient Plaintiffs ask they be allowed to amend consistent with the determinations of the court.

\\Gregory X. Gorman\\ Attorney for Plaintiffs

Gregory X. Gorman
GORMAN and GORMAN
220 S. Halsted St.
Suite 200
Chicago, IL 60661
(312) 332-4240