IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN HUGHES, IMOGEN ) | | |
| OLIVER, and VIRGINIA SHERWOOD, ) | | |
| Plaintiffs, ) | No. 15 CV 10 5546 | |
| ) | | |
| vs. ) | Judge St. Eve | |
| ) | | |
| SCARLETT'S G.P., INC. d/b/a ) | Mag.Judge Finnegan | |
| PINK MONKEY, CLINTON ) | | |
| ENTERTAINMENT MANAGEMENT, INC., ) | | |
| LLC, d/b/a LLC, d/b/a PINK ) | | |
| MONKEY, NEW YORK STRIP d/b/a ) | | |
| PINK MONKEY, SCARLETT'S L.P. ) | | |
| and MARK VAJDIK, ) | | |
| Defendants. ) | | |

**PLAINTIFFS RESPONSE TO MOTION OF DEFENDANTS CLINTON MANAGEMENT AND SCARLETT'S L.P.'S MOTION TO DISMISS**

Plaintiffs Kathleen Hughes, Imogen Oliver and Virginia Sherwood, through their attorney Gregory X. Gorman Answer the Motion of Defendants Clinton Entertainment Management, LLC's and Scarlett's L.P's 12 (b) (6) Motion to Dismiss as follows:

Plaintiffs are former dancers at an adult entertainment business (the "Club") known as the Pink Monkey owned and operated by the named defendants in Chicago. The Plaintiffs worked at the Club from approximately August 2012 to August 2015. ( Complaint¶4)

The main basis for the Complaint is that during the time

1

they worked at the Pink Monkey the Plaintiffs were misclassified as independent contractors, were not paid any wages, were not provided other benefits and rights to which they were entitled to as employees, and that they were required to split tip income with their employer, the Pink Monkey. (Complaint¶4)

The Complaint consists of five counts: Count I alleging violations of the Fair Labor Standards Act ("FLSA"); Count II alleging violations of the Illinois Minimum Wage Law ("IMWL"); Count III alleging violations of the Illinois Wage Payment and Collection Act ("IWPCA"); Count IV alleging RICO violations; and, Count V alleging Retaliatory Discharge of the Plaintiff Virginia Sherwood.

Defendants' Motion to Dismiss seeks dismissal under Rule 12(b) all five Counts for failure to state a cause of action under FRPC 12 (b)(6). For purposes of 12(b)(6) Motion to Dismiss factual allegations of the complaint are accepted as true, and all reasonable inferences are drawn in Plaintiffs' favor. *Mann v. Vogel,* 707 F. 3d 872, 877 (7th Cir. 2013). Under Federal Rule of Civil Procedure 8(a)(2) the Complaint must contain a short and plain statement of the claim showing that the pleader is entitled to Relief. A claim has facial plausibility when the Plaintiffs plead factual content that allos the court to draw the reasonable inference that the

defendants are liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement". *Bell Atl. Corp. v. Twombly,* 550 U.S. 554,555, 127 S. Ct. 1955 (2007, *Ashcroft v. Iqbal,* 556 U. S. 662,678, 129 S. Ct. 1937, 173 173 L. Ed. 2d 929 (2009)

Specific facts are unnecessary, but the complaint must give the defendant fair notice of what the claim is and the grounds upon which rests.

### A. MINIMUM WAGES

Defendants move to dismiss Plaintiffs minimum-wage claims under FLSA, IMWL and IWPCA. This argument primarily revolves around Defendants' theory that the dance fees Plaintiffs received should be treated as "wages", not as tips, and therefore Plaintiffs were paid more than the minimum wage. (Motion to Dismiss, p. 6-7)

This argument fails to take Plaintiffs' well pleaded facts as true. Paragraph 62 of the Complaint alleges, "The amounts paid to dancers, like Plaintiffs, by customers in relation to private table dances were tips, not wages. The entire amount collected from customers in relation to table dances performed by exotic dancers were not made part of defendants' gross receipts at any point".

The Complaint further defines "table dance tips" to include table dances, chair, couch, lap, and/or VIP room dances. (Complaint 20 -21)

Whether or not the monies paid for service charges or tips is a question of fact, and the burden of proving that the monies collected were included in Defendants' gross receipts is on the Defendants, not Plaintiffs. The cases of *Reich v. ABC/YORK-Estes Corp.* 1997 WL 264379 (N.D. Ill 1997), and *Mechmet v. For Seasons Hotels LTD.*, 639 F. Supp. 330, cited by Defendants were Summary Judgment cases, not 12(b)(6) cases. *Reich*, like this case, involving female exotic dancers claiming the monies paid by customers were tips, not service charges. In that case, Judge Manning, adopting the recommendation of (then) Magistrate Judge Pallmeyer, granted Summary Judgment in Plaintiffs' favor on the issue of service charge versus tip. "Magistrate Judge Pallmeyer concluded that, under the FLSA, the 'table dance fees' paid to dancers at the Inn are not service charges which defendant may use in order to satisfy their obligations under sections 6 and 7 of the FLSA".

Judge Pallmeyer reasoned that 'before an employer may receive a minimum wage credit for service charges distributed to the employees, **the employer must show that the service charges have become a part of its gross receipts.**' Judge

Pallmeyer found since there is nothing in the record demonstrating that the table dance fees were part of its gross receipts during the relevant time period, defendants had not shown the table dance fees are service charges under the FLSA." *Reich supra,* at p.4. (emphasis added)

Thus the defense that monies received and paid entertainers were service charges as opposed to tips is more in the nature of an affirmative defense, to be proven by Defendant, not to be taken as fact under a Motion to Dismiss.

### B. PLAINTIFFS' OVERTIME CLAIMS

Defendants claim that Plaintiffs have failed to plead sufficient facts to support claims for overtime under the FLSA, IMWL or the IWPCA.

Under the FLSA and the IMWL overtime at the rate of time and a half is due if the employee exceeds more than 40 hours in a workweek. 29 USC 207(a)(2), 820 ILCS 105/4(a). Plaintiffs claim they are entitled to "wages" under the ILWPCA 820 ILCS 115/2. The Complaint adequately alleges that at such times as the Plaintiffs worked more than 40 hours in a week they were not paid time and a half. (Complaint ¶62)

It is the obligation of the employer, not the employee, to keep records of the hours worked by the employee. 820 ILCS

5

105/829 USC 210(c). The fact that Plaintiffs have not kept records and cannot specify dates that they worked overtime is not fatal to their claims, and certainly doesn't have to be proven at this stage of the litigation.

### C. JURISDICTION UNDER FLSA

The Motion to Dismiss argues that the Complaint should be dismissed because Plaintiffs did not specifically plead that they or their employer are engaged in commerce. (Motion To Dismiss, p.9)

The Complaint alleges that the Pink Monkey Club is operated as a business establishment where live semi-nude dance entertainment is presented to adult members of the general public. (Complaint¶9) During the time the Plaintiffs were there the Club averaged 20-40 dancers working on any given night. (¶14) The Club also accepted credit cards ¶29 , ¶29 (F).

As noted above "A claim has facial plausibility when the Plaintiff **pleads factual content** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, supra* at 670.

The only reasonable and possible inference based on the nature of the business described in the Complaint, number of

employees, and the use of processing of credit cards is that the Defendants are engaged in commerce. Certainly the processing of payment through a credit card transaction alone is "commerce". Any other inference would itself be unreasonable and implausible.

### D. INSUFFICIENT ALLEGATIONS REGARDING EMPLOYER

The Motion argues (at p. 10) that the Complaint should be dismissed as against the moving Defendants because Plaintiffs failed to specify which Defendants are responsible for the alleged wrongdoing.[1]

The Plaintiffs have alleged the following: The Pink Monkey is wholly owned by the Defendants Scarlett's G. P., which does business as the Pink Monkey, and Clinton Entertainment Management Inc., which does business as the Pink Monkey, Scarlett's L. P., which does business as Pink Monkey and issued the 1099s to the Plaintiffs. (Complaint ¶4-9, 118, Exhibit B) The Complaint also alleges that the Defendant Mark Vajdik is an owner of Scarlett's G. P. and a general partner of Scarlett's L . P . Together, the Defendants manage all

---

[1] Plaintiffs concede that at times the Complaint incorrectly refers to Defendants in the singular. In the context of the Complaint as a whole there should be no confusion that all Defendants are included.

aspects of the business operation including attracting investors, establishing the hours of operation, creating the atmosphere, coordinating advertising, hiring and controlling the staff (managers, waitresses, bartenders, etc). ¶47 Together, the Defendants engaged a pattern of racketeering activity by devising a scheme to defraud Plaintiffs. (¶118)

All the Plaintiffs know, all they could be expected to know, at this stage of the litigation, is that they worked for the Pink Monkey. They never heard of these corporate entities, it was their attorney who identified them. The role of each Defendant in the enterprise will have to be discovered, but they are all operating as the Pink Monkey, in concert, with common ownership.

### E. INSUFFICIENT RICO ALLEGATIONS

Defendants' Motion to Dismiss Count IV, the RICO Count, is brought under FRCP 9 (b), which requires that fraud be plead with particularity. Defendants incorrectly argue that, "The sole RICO allegation is paragraph 118 Of the Complaint" (Motion to Dismiss at p. 12) This is, of course, wrong. Paragraph 116 of the Complaint incorporates all of the preceding paragraphs of the Complaint as allegations in Count IV. It is the preceding paragraphs which are incorporated that form the factual basis of the RICO Count. These paragraphs

detail the "who, what, when, where, and how" of the circumstances constituting the RICO violations. With respect to these paragraphs, as is relevant to this motion, Plaintiffs have alleged as follows:

Defendants employed Plaintiffs and managed, directed and controlled the operations of the Club and dictated the common employment policies including: Misclassifying Plaintiffs as independent contractors as opposed to employees; requiring that Plaintiffs to turn over their tips to the club to pay its other employees (including Club managers, doormen, floor hosts, house moms, DJs, and employees who do not usually receive tips) by paying "tip outs"; not to pay dancers any money, but to report to the IRS that they did; to demand and take improper and unlawful payments from Plaintiffs; to adopt and implement employment policies which violate the FLSA, IWPCA and IMWL; to threaten retaliation against any dancer (Plaintiff) who might attempt to assert her statutory rights to be recognized as an employee (Complaint ¶10); that Defendants' misclassification of Plaintiffs as independent contractors was designed to deny them their right to receive minimum wages; to demand and retain the tips given to them by their customers to enhance Defendant profits; and, to deny Plaintiffs the protections given to them under FLSA, IWPCA and IMWL.(Complaint ¶24) The misclassification was willful.

(Complaint ¶25) Defendants threaten to penalize, terminate, and discriminate against dancers (Plaintiffs) if they assert their FLSA, IWPCA or IMWL rights; (Complaint ¶28) Defendants knew or should have known that the misclassifications were unlawful, and were on actual or constructive notice of same; (Complaint ¶25, 68). The Defendant members of the Pink Monkey enterprise engaged in a pattern of racketeering activity by devising a scheme to obtain Plaintiffs' property by means of falsely and fraudulently classifying them as independent contractors and issuing false 1099 forms to the IRS. (Complaint ¶118, Exhibit) Although the Complaint does not specifically say so, the reasonable inference is that the filing of false 1099s forms to the IRS involves mail fraud.

RICO allows a private cause of action for any person injured in his business or property in violation of the enumerated RICO proscriptions. 18 U.S.C. §1962 and 1964. The §1962 RICO violations relevant to this action include:

The receipt of income derived from a pattern of collection of an unlawful debt for the establishment or operation of any enterprise which is engaged in interstate commerce. 18 U.S.C. §1962 (a) and (b). Racketeering Activity is also defined as any action involving mail fraud (mailing and filing a false 1099 forms). "It shall be unlawful for any person employed by or associated with any enterprise which is

10

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. 1962 (c). Defendants were engaged in interstate commerce through the use of credit cards to further their scheme and through the use of the U. S. Mail to file fraudulent 1099s with the IRS, as well as to collect false debt by confiscating Plaintiffs' monies.

Plaintiffs have sufficiently alleged facts to support a pattern of collection of unlawful debt and mail fraud. Plaintiffs are not required to prove their case at the pleading stage.

### F. VIRGINIA SHERWOOD'S RETALIATORY DISCHARGE CLAIM

The Complaint alleges that Plaintiff Sherwood, advised the Club in writing, that she would continue to work at the Club five nights a week as an employee, but not as an independent contractor, a protected exercise of her rights under the FLSA 29 USC 218(c)(a)subsections (2) (4) and (5); IWPCA 820 ILCS 115/13(c) (both of which provide for a private cause of action), and IMWL 820 ILCS 105/11(8)(c) which makes retaliation a criminal offense and therefore a violation of

public policy. (Complaint Ex. E p. 2)

In response, on May 1, 2015 Defendants informed Sherwood that she was fired retroactively to October 27, 2014, "having abandoned her obligations to the Company". (Complaint Exhibit F) The Complaint further alleges that the proffered reason for discharge was a complete invention, a pretext, and the real reason for her firing was simply retaliation for attempting to exercise her rights under FLSA, IWPCA and IMWA. (Complaint §119 - 124, Exhibits D through K). This retroactive discharge was strange in that Sherwood worked at the Club after the claimed October 27, 2014 date, with no one informing her that she had been fired or that she had "abandoned her obligations" in October.

Defendants further argue that the Complaint and its Exhibits, "show that Sherwood voluntarily and intentionally, *on the advice of her counsel,* ceased working at least on February 5, 2015 (not October 27,2014), and then offered only to come back under terms that she believed would be more favorable to her than other dancers. Simply put, Sherwood was never discharged and cannot therefore state a claim for improper discharge. Indeed, there are no allegations that the defendants terminated Sherwood's employment or that Sherwood offered to return to work on the same terms that were applied to other dancers". (italics in original)

12

Taking those two assertions in order:

1.) Sherwood did not offer to come back under "new terms that she believed would be more favorable to her than other dancers". She offered to come back as an employee, which she had a right to be classified as. This was protected activity under FLSA, ILML and IWPCA. (Complaint ¶ 119 -124, Exs. E and F) a simple reading of the Exhibits will show how distorted Defendants' interpretation is;

2.) No matter how Defendants want to characterize it Sherwood was terminated on April 24, 2015, one week after she offered to come back only as an employee. The termination letter was dated May 1, 2015, containing the obviously pretextual reasons for the termination. Sherwood never heard of any termination prior to May 1, 2015. She never "effectively terminated her independent services agreement without notice on October 27, 2014". (Complaint Exs. E and F) The triers of fact can determine how believable that assertion is. The argument certainly does not take Plaintiff's allegations to be true. (Complaint ¶119 - 123)

Sherwood has sufficiently alleged that she was engaged in a statutorily protected expression; that she suffered an adverse action by her employer; and, that there is a causal link between the protected expression and the adverse action.

Even if Sherwood is incorrect in her assertions that she

13

should be treated as an employee rather than an independent contractor, the laws cited prohibit firing her just because she made a complaint of violation of the Act. Any employer, or any agent of an employer, who discharges or in any other manner discriminates against any employee because that employee has made a complaint to his employer... is guilty of a Class C misdemeanor. An employee who has been unlawfully retaliated against shall be entitled to recover in a civil action. 820 ILCS 115/13(c). Similar protections are afforded by the IMWL 820 ILCS 105/118(c) and the FLSA 29 USC 218(c)(a).

In short, Sherwood's pleadings and Exhibits more than adequately state a cause of action for retaliatory discharge.

WHEREFORE, Plaintiffs pray that the motion to dismiss brought by Defendants Clinton Entertainment Management, LLP and Scarlett's L.P. be denied. In the event the court determines any part of the complaint is deficient Plaintiffs ask they be allowed to amend the Complaint in a manner consistent with the determinations of the court.

\\Gregory X. Gorman\\
Attorney for Plaintiffs

```
Gregory X. Gorman
GORMAN and GORMAN
220 S. Halsted St.
Suite 200
Chicago, IL 60661
(312) 332-4240
```