**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KATHLEEN HUGHES, IMOGEN OLIVER, and VIRGINIA SHERWOOD, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 15-cv-5546 |
| | ) |
| SCARLETT'S G.P., INC. d/b/a PINK MONKEY, CLINTON ENTERTAINMENT MANAGEMENT, LLC d/b/a PINK MONKEY, NEW YORK STRIP d/b/a PINK MONKEY, SCARLETT'S L.P. and MARK VAJDIK, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Kathleen Hughes, Imogen Oliver, and Virginia Sherwood are former exotic dancers at the Pink Monkey, an adult entertainment business allegedly owned and operated by Defendants. They bring this action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") (Count I), the Illinois Minimum Wage Law ("IMWL") (Count II), the Illinois Wage Payment and Collection Act ("IWPCA") (Count III), the Racketeer Influence and Corruption Act, 18 U.S.C. 1964 ("RICO") (Count IV), and, as to Virginia Sherwood, retaliatory discharge under the FLSA, IMWL, and IWPCA (Count V). Plaintiffs claim that Defendants misclassified them as independent contractors instead of employees, failed to pay them minimum wage or overtime pay, and unlawfully confiscated their tips. (*See* R.1, Compl.).

On September 8, 2015, Defendants Scarlett's G.P., Inc. and Mark Vajdik moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted and, as to the RICO claim, for failure to allege fraud with particularity. (R.10). On October 19, 2015, the remaining Defendants, Clinton Entertainment Management, LLC and Scarlett's L.P.,[1] also moved to dismiss the Complaint, advancing similar arguments in favor of dismissal (R.18). Both motions are before the Court. For the reasons set forth below, the Court grants the motions, dismissing the Complaint without prejudice.

## BACKGROUND[2]

The Pink Monkey (the "Club") is an adult club offering semi-nude dance entertainment. (R.1, Compl. ¶ 9). Defendants Clinton, Scarlett's G.P., Inc., and Scarlett's L.P. "maintain ownership, recruitment, management, and/or operational interest" in the Pink Monkey. (*Id.*). Defendant Mark Vajdik ("Vajdik") is the President of Scarlett's G.P., Inc. and a general partner of Scarlett's L.P. (*Id.* ¶¶ 7-8). Defendants employ 20-40 exotic dancers on any given day. (*Id.* ¶ 14). Dancers must work a minimum of three shifts each week. (*Id.* ¶ 35). Defendants "dictate[] the common employment policies applicable in the Club," including policies relating to work status classification and tip splitting among Club employees. (*Id.* ¶ 10).

Each dancer signs a contract purporting to classify her as an independent contractor. (*Id.* ¶ 18; *see also* R.1-1, Form 1099 showing a payment of $17,275.00 in "non-employee

---

[1] Defendants Clinton Entertainment Management, LLC ("Clinton") and Scarlett's L.P. represent that named Defendant New York Strip "no longer exists[.]" (R.17, Clinton Br. In Support of Motion to Dismiss at 4).

[2] The Court recites these facts accepting the Complaint's allegations as true. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The Court also properly considers documents attached to and referenced in the Complaint. *Id.* at 729.

compensation" to Plaintiff Sherwood, attached as Exhibit B to the Compl.). Defendants do not compensate dancers on a set salary or wage basis. (R.1, Compl. ¶ 13). Rather, dancers generate their income through tips received while performing "exotic table, chair, couch, lap, and/or VIP room dances." (*Id.* ¶ 20). These tip amounts are mandatory and non-discretionary; the Pink Monkey—not the individual dancer—establishes these fixed prices for "Cabana" dances and "VIP Room" dances. (*Id.* ¶¶ 36-37; R.1-1, Pink Monkey Handbook at 5, attached as Exhibit A to the Compl.). For Cabana dances, for example, the Pink Monkey charges $30 per dance, which the dancer collects from the patron. (*Id.* ¶ 21; R.1-1, Exhibit A at 5). The Club's floor host continuously tracks each Cabana dance. (R.1, Compl. ¶¶ 38-39). For VIP dances, the patron pays the Club a set fee according to duration and method of payment – for example, $200 in cash for 15 minutes in the VIP room. (*Id.* ¶ 21; R.1-1, Exhibit A at 5). At the end of her shift, the dancer receives her fixed cut of the VIP dance fees. (R.1, Compl. ¶ 30; R.1-1, Exhibit A at 5-6 ("First you will be paid for any V.I.P. rooms you did that evening")).

Before checking out for the evening, the dancer must pay the mandatory "tip-out" fee, which "is 15% of [her] total earnings for the evening," as well as remit to the Club $5 for each Cabana dance performed. (R.1-1, Exhibit A at 6; R.1, Compl. ¶¶ 21, 30). The "tip-out" goes to Club managers, floor hosts, doormen, disc jockeys, and other employees who do not normally receive tips from patrons. (R.1, Compl. ¶¶ 34, 41, 113). In addition, dancers must pay the "House Mom" a fixed disc jockey/House Mom fee for each shift, as well as a fixed House Fee, as determined by the dancer's start time. (*Id.* ¶¶ 21, 30; R.1-1, Exhibit A at 1).[3] These fees,

---

[3] In addition to these compensation policies, Defendants also set policies and/or guidelines for the dancers' scheduling, etiquette, clothing, physical appearance, and stage performance. (*See generally* R.1-1, Exhibit A).

together with the 15% "tip-out" and the $5 per Cabana dance contribution, will be referred to herein as the "Tip Splitting Policy."

Plaintiffs now allege that Defendants misclassified them and denied them the minimum wage and overtime pay guaranteed to employees under the FLSA, IMWL, and IWPCA. In particular, Plaintiffs allege they are employees—not independent contractors—of the Pink Monkey under the relevant "economic reality test," (*id.* ¶¶ 25-50), and that Defendants paid them "no wages whatsoever" and forced them to "work eight (8) hours or more without breaks and without overtime pay" in violation of the FLSA, IMWL, and IWPCA. (*Id.* ¶¶ 59, 30). Plaintiffs further contest the Tip Splitting Policy as unlawful, claiming that they are entitled to retain all patron tips as their sole property. (*Id.* ¶¶ 52-54). Plaintiffs seek unspecified back wages, overtime compensation, and tip recovery, along with applicable interest and liquidated damages. (*E.g.*, *id.* ¶ 76).

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under federal pleading standards, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]he court must review the complaint to determine whether it contains enough fact to raise a reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged." *Adams*, 742 F.3d at 729 (citation omitted). A complaint will not survive a motion to dismiss, however, "simply because the defendants managed to figure out the basic factual or legal grounds for the claims."

*Id*. In reviewing a complaint, the Court must accept all "factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim," however, "are not entitled to this presumption" of truth. *Id.*

"Beyond the requirements of Rule 12(b)(6), Rule 9(b) requires all allegations of fraud to be 'state[d] with particularity.'" *Simonian v. Blistex, Inc.*, No. 10 CV 01201, 2010 WL 4539450, at *2 (N.D. Ill. Nov. 3, 2010) (quoting Fed.R.Civ.P. 9(b)).

## ANALYSIS

### I. FLSA Claim (Count I)

#### A. Applicability of the FLSA

The FLSA requires an employer to pay minimum and overtime wages to each of "his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines an "enterprise engaged in commerce" as an enterprise that "has employees engaged in commerce or in the production of goods for commerce . . . and . . . whose annual gross volumes of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii).

Defendants do not presently challenge the characterization of Plaintiffs as "employees" within the meaning of the FLSA. *Contra Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995) (noting that a "core issue in this case is whether the dancers are 'employees' . . . If not (that is, if the dancers are independent contractors), the [FLSA] does not apply"). Instead, Defendants challenge Plaintiffs' failure to allege that Plaintiffs, the Club, and/or Defendants are "engaged in commerce," as required on an FLSA claim. *See Hicks v. Avery Drei, LLC*, 654 F.3d

739, 745-46 (7th Cir. 2011) (discussing whether plaintiff was "engaged in commerce" and noting that, "to prevail on her FLSA claim for overtime wages, [plaintiff] must first demonstrate that she or her "Employer" . . . falls within the Act so as to trigger its substantive provisions"); *see also Torres v. Pallets 4 Less, Inc.*, No. 14 CV 4219, 2015 WL 920782, at *2-3 (N.D. Ill. Mar. 2, 2015) (discussing individual-based and enterprise-based coverage under the FLSA).

Plaintiffs, in response, point to their general allegations that the Pink Monkey is a business establishment that is open to the general public, employs many dancers (as well as doormen, managers, and disc jockeys), and processes credit card transactions. The Complaint does not even allege, however, the type of FLSA coverage (individual versus enterprise) under which Plaintiffs claim protection. Plaintiffs offer no specific details of interstate commerce, and make no attempt to address the monetary threshold triggering enterprise coverage. While the Court is mindful that discovery has not yet proceeded, Plaintiffs have made no effort to demonstrate the applicability of the FLSA in the Complaint.

Additionally, Defendants fault Plaintiffs for failing to distinguish among them and failing to identify *which* Defendant is the "employer" for purposes of FLSA liability. The failure to distinguish between Defendants is impermissible insofar as it "fails to place each [d]efendant on notice as to its alleged wrongful conduct." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 865 (N.D. Ill. 2009). Plaintiffs respond by arguing that "the ownership and control of the Pink Monkey is indeed a confusing Gordian knot" and that "the unraveling of the confusing ownership will have to be done through discovery." (R.14, Pls.' Response at 5-6; *see also* R.20, Pls.' Response at 7-8).

Even assuming complicated ownership, though, Plaintiffs offer no specific allegations regarding *any* named Defendant's role in the misclassification and/or tip splitting policies of

6

which they now complain.[4] Rather, Plaintiffs allege that Defendants, as a collective enterprise, "manage all aspects of the business operation" and "dictate" applicable policies. (R.1, Compl. ¶¶ 47, 10). These FLSA allegations mirror those found to be insufficient against entity defendants in *Berger v. PIKR, Ltd.*, where the complaint failed to "specify each defendant's alleged role with respect to the plaintiffs' employment. Instead, it alleges that the 'defendants,' collectively, operate the restaurant, including work assignments and tip pooling." No. 14 C 8543, 2015 WL 2208200, at *3 (N.D. Ill. May 8, 2015). The Court notes, moreover, that Plaintiffs' FLSA claim against Defendants (the Club's purported owners) also alleges that Defendants delegated all functions regarding "employment status classification and treatment of dancers" to the Club's managers. (R.1, Compl. ¶ 9).

Given Plaintiffs' deficient pleading, the Court dismisses the FLSA claim without prejudice to re-plead. *See Berger*, 2015 WL 2208200 at *3 (dismissing FLSA claim against entity defendants without prejudice); *Specht*, 660 F. Supp. 2d at 865 (dismissing claim against entity defendants with leave to re-plead to "distinguish between [d]efendants and allege supporting factual information of some specificity as to each [d]efendant").

### B. Wage, Overtime, and Tip Return Obligations Under the FLSA

The Court now turns to the merits of Plaintiffs' FLSA claims. Here, too, Plaintiffs have failed to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged." *Adams*, 742 F.3d at 729. Plaintiffs allege three forms of wrongdoing in connection with their FLSA claim: (1) failure to pay statutory wages; (2) failure to pay overtime compensation; and (3) failure to return Plaintiffs' tip

---

[4] Plaintiffs fail, for example, to identify any Club representative—whether entity or individual—involved in negotiating and/or signing their contracts, filing or paying out on their 1099 forms, determining their work status classification, and/or implementing the Tip Splitting Policy.

7

"property." (R.1, Compl. ¶¶ 52, 54, 57-61). The Complaint does not offer "sufficient factual matter" to state a claim for relief that is facially plausible as to any of these categories. *Ashcroft*, 556 U.S. at 678.

### 1. Minimum Wage Obligations

The parties do not dispute that the FLSA requires a subject employer to pay its employees a minimum hourly wage, and to compensate its employees at one and one-half times the regular rate for a workweek longer than forty hours. *See* 29 U.S.C. §§ 206, 207. Plaintiffs contend that they "never received any wage or other compensation" during the course of their employment at Pink Monkey, in violation of 29 U.S.C. § 206. (R.1, Compl. ¶¶ 20, 59). Rather, Defendants paid them tips, and "no part of those amounts can be used to offset Defendants' obligation to pay minimum wages to its dancers." (*Id.* ¶ 63). Plaintiffs further contend that the FLSA tip credit provision, 29 U.S.C. § 203(m), does not apply to reduce the Club's minimum wage obligations. (*Id.* ¶¶ 64-66).

Defendants argue that the Complaint negates any minimum wage violation, because it alleges that Plaintiffs received—at the very least—fixed dance fees from the VIP room. The Complaint makes clear that these fees were fixed, mandatory, non-discretionary, paid directly to the Club, recorded by the Club, and (seemingly) included in the Club's gross receipts. (R.1, Compl. ¶¶ 21-22, 30, 36-39).[5] As Defendants recognize, this arrangement is more akin to a wage

---

[5] The Complaint is unclear and inconsistent about how Defendants treat dancers' fixed tip amounts—whether stage, Cabana, or VIP—for accounting and tax purposes. For example, Plaintiffs allege that the "full amount a Plaintiff is given by patrons in relation to the dances she performs are taken into Defendants' gross receipts, with a portion then paid out to the dancer . . . Defendants issue 1099 forms falsely claiming customer tips as non-employee compensation[.]" (R.1, Compl. ¶ 22). In subsequent paragraphs, however, Plaintiffs contend that the "entire amount collected from the customers in relation to the table dances performed by exotic dancers *were not* made part of Defendants' gross receipts at any point." (*Id.* ¶¶ 62, 40) (emphasis added). Plaintiffs also do not explain—at any level of detail—the source of or basis for the $17,275 paid

or service charge than a tip. (R.9, Vajdik Br. In Support of Motion to Dismiss at 5-7; R.17, Clinton Br. In Support of Motion to Dismiss at 6-7). Accordingly, as alleged, these amounts may be used to offset any minimum wage liability under the FLSA. *See Reich v. ABC/York-Estes Corp.*, 157 F.R.D. 668, 678-80 (N.D. Ill. 1994), *rev'd in part*, 64 F.3d 316 (7th Cir. 1995) (noting that "a service charge may be used in full to reduce the minimum wage amounts owed" and determining that monies received by exotic dancers were tips—not service charges—where the club kept no records of the number of dances performed or the amount of dance fees earned, the dance fees were discretionary and paid directly to the dancers, and the dance fees were not included in the club's gross receipts); *see also Reich v. ABC/York-Estes Corp.*, No. 91 C 6265, 1997 WL 264379, at *4-7 (N.D. Ill. May 12, 1997) (adopting this reasoning). Here, in contrast to *Reich*, the Complaint describes the Pink Monkey's fixed dance fees—at least the VIP dance fees, if not the Cabana dance fees—as service charges, not tips. *See Mechmet v. Four Seasons Hotels, Ltd.,* 639 F. Supp. 330 (N.D.Ill.1986), *aff'd,* 825 F.2d 1173 (7th Cir.1987) (concluding that a non-discretionary banquet service charge was more akin to a commission than a tip where customers paid it directly to the employer-hotel).[6]

Plaintiffs point to their allegation that the Pink Monkey did *not* include dance fees in its gross receipts and argue that, in any event, this issue is fact-intensive and more suitable for summary judgment than disposition at the 12(b)(6) stage. The Court recognizes that "the employer bears the burden of proving that it is entitled to the service charge credit" under the

---

to Plaintiff Sherwood in "non-employee compensation" in 2014. (*See* R.1-1, Form 1099, attached as Exhibit B to the Compl.).

[6] Defendants further contend that, as a factual matter, Plaintiffs' compensation from VIP fees far exceeded the minimum wage. (R.9, Vajdik Br. In Support of Motion to Dismiss at 6-7; R.16, Vajdik Reply Br. at 6-7; R.17, Clinton Br. In Support of Motion to Dismiss at 6). Plaintiffs do not dispute this contention.

FLSA. *Reich*, 157 F.R.D. at 680; *cf. Demos v. City of Indianapolis*, 302 F.3d 698, 701 (7th Cir. 2002) (noting that the "FLSA is a remedial act and exemptions from its coverage are to be narrowly construed against employers") (citation omitted). Plaintiffs' own submission, however, reflects that the Pink Monkey may be entitled to this credit. (R.1, Compl. ¶¶ 21-22, 30, 36-39; R.1-1, Exhibit A). Ultimately, Plaintiffs' contradictory pleading on the issue of whether the Pink Monkey included dance fees in its gross receipts (*compare* R.1, Compl. ¶ 22 *with* ¶ 62) precludes the Court from determining this issue at this juncture.[7]

Even setting this issue aside, however, the Complaint suffers from serious pleading deficiencies warranting dismissal of the FLSA claim. Count I recites the elements of a minimum wage violation (29 U.S.C. § 206), yet Plaintiffs make no allegations as to their actual earnings or the hours worked for which they seek unpaid minimum wages. Under well-established pleading standards, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Because Plaintiffs offer no factual details suggesting a right to relief above the speculative level, their unpaid wage claim fails. *See White v. Classic Dining Acquisition Corp.*, No. 1:11-CV-712-JMS-MJD, 2012 WL 1252589, *4-6 (S.D. Ind. Apr. 13, 2012).

### 2. Overtime Compensation Obligations

Plaintiffs' claim for overtime compensation (29 U.S.C. § 207) fares no better. Plaintiffs assert that "[a]t such times as Plaintiffs worked more than forty hours in a week, they were not paid time and a half." (R.1, Compl. ¶ 58). Here, again, Plaintiffs offer no factual detail

---

[7] Similarly, the Court cannot—and need not—determine the factual issue of whether the Club is entitled to a tip credit under 29 U.S.C. § 203(m) arising from the Tip Splitting Policy, or whether the *Klinghoffer* rule applies in this case to preclude FLSA/IMWA liability. *See, e.g.*, *Prange v. Borders, Inc.*, No. 05 C 2194, 2006 WL 2632013, at *5 (N.D. Ill. Sept. 11, 2006) (discussing the *Klinghoffer* rule).

regarding overtime hours worked, monies earned, or monies purportedly due.  Other courts in this district have dismissed complaints which merely recite the elements of an FLSA claim without supporting factual detail.  *See Silver v. Townstone Fin., Inc.*, No. 14-CV-1938, 2015 WL 1259507 (N.D. Ill. Mar. 17, 2015); *Kwan Bom Cho v. GCR Corp.*, No. 12 C 4562, 2013 WL 675066 (N.D. Ill. Feb. 22, 2013); *Robertson v. Steamgard*, No. 11 C 8571, 2012 WL 1232090 (N.D. Ill. Apr. 12, 2012); *Butler v. E. Lake Mgmt. Grp., Inc.*, No. 10-CV-6652, 2012 WL 2115518 (N.D. Ill. June 11, 2012); *Wilson v. Pioneer Concepts, Inc.*, No. 11-CV-2353, 2011 WL 3950892 (N.D. Ill. Sept. 1, 2011).  To avoid dismissal, Plaintiffs counter that they "have not kept records and cannot specify dates that they worked overtime."  (R.20, Pls.' Response at 6; *see also* R.1, Compl. ¶¶ 70-75).  This position, however, ignores that "an employee who brings suit for unpaid overtime compensation has the burden of proving that she performed work for which she was not properly compensated."  *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529, 535 (N.D. Ill. 2006) (discussing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)).  This burden is "not an insurmountable one[,]" but Plaintiffs must present some allegation as to unpaid overtime hours.  *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1072 (N.D. Ill. 2005).  Plaintiffs must do more than "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit)."  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Rather, Plaintiffs must "provid[e] some specific facts to ground those legal claims."  *Id.*  Their failure to do so here defeats their overtime compensation claim.

### 3. Tip Return Obligations

Plaintiffs also claim an interest in recovering their tip "property" under the FLSA.  (R.1, Compl. ¶¶ 60, 62, 76; R.14, Pls.' Response at 6-7 ("Defendants confiscated part of these tips by

requiring tip-outs . . .")). Plaintiffs cite no case law recognizing or even discussing this claim under the FLSA. Defendants direct the Court's attention to a recent Fourth Circuit case, which held that the FLSA does not create a private right to bring a claim for lost "tip" wages pursuant to a tip sharing arrangement. *See Trejo v. Ryman Hospitality Prop.*, *Inc.*, 795 F.3d 442 (4th Cir. 2015). The Court agrees with the reasoning in *Trejo*.

The FLSA is "designed to protect workers from the twin evils of excessive work hours and substandard wages." *Howard v. City of Springfield, Illinois*, 274 F.3d 1141, 1148 (7th Cir. 2001). Its principal provisions, therefore, establish wage and hour standards. *See* 29 U.S.C. §§ 206, 207. Section 203(m) addresses the tip credit and tip pooling mechanisms. *See* 29 U.S.C. § 203(m). Section 203(m) does not, however, provide a freestanding cause of action for "tipped employees" to recover damages from the improper administration of a tip pool. Rather, "[i]f an employer improperly operates a tip pool, the employer cannot take the tip credit under either the FLSA or the IMWL." *Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 864-65 (N.D. Ill. 2014) (citing implementing regulations and collecting cases). Courts in this Circuit routinely adjudicate FLSA disputes concerning "tipped employee" practices that are tethered to a minimum wage or overtime claim. *See, e.g.*, *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) (analyzing FLSA allegations of improper tip pooling in the context of the "minimum wage and maximum hour provisions of . . . the FLSA"); *see also Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1033 (N.D. Ill. 2012) (noting that an employer is "required to comply with the minimum wage requirements of . . . the FLSA" and regulations made thereunder regarding tipped employee practices); *Frebes v. Mask Restaurants, LLC*, No. 13 C 3473, 2013 WL 5290051, at *1 (N.D. Ill. Sept. 18, 2013) ("Plaintiffs allege that Defendants

violated the FLSA and IMWL because food runners are not customarily tipped employees. Accordingly, Plaintiffs contend that Defendants did not pay them the required minimum wage").

The Court is not aware, however, of any authority sustaining a standalone private cause of action for an alleged tip sharing violation under the FLSA, untethered to an alleged minimum wage or maximum hour violation. Furthermore, Plaintiffs have failed to identify any such support. The Court thus finds that Plaintiffs cannot dispute the Tip Splitting Policy—unrelated to a wage or overtime claim—under the guise of the FLSA. *See Trejo*, 795 F.3d at 448 (noting that the "the statutory language of the FLSA, including § 203(m), simply does not contemplate a claim for wages other than minimum or overtime wages") (citation and quotation omitted).

The Court dismisses with prejudice Plaintiffs' claim for tip recovery under the FLSA. Because the pleading defects as to unpaid wages and overtime compensation may be curable, the Court dismisses Plaintiffs' claim for minimum and overtime wages under the FLSA without prejudice.

**II.    IMWL Claim (Count II)**

Count II alleges a violation of the Illinois minimum wage law, IMWL, 820 ILCS 105. Plaintiffs do not dispute that the IMWL parallels the FLSA, and that the same legal analysis applies to claims made thereunder. *See Knapp v. City of Markham*, No. 10 C 03450, 2011 WL 3489788, at *8 (N.D. Ill. Aug. 9, 2011) ("Claims brought under the FLSA and IMWL are evaluated using the same general analysis"); *Silver*, 2015 WL 1259507, at *1 ("The FLSA and IMWL . . . are analyzed using the same legal framework"). The Court therefore dismisses Count II without prejudice, for the reasons set forth as to Count I.

### III.  IWPCA Claim (Count III)

Count III alleges a violation of the state law guaranteeing the timely and complete payment of due wages, IWPCA, 820 ILCS 115.  The IWPCA "defines 'wages' narrowly—a wage is 'compensation owed an employee *by an employer pursuant to an employment contract or agreement* between the 2 parties . . . ." *Enger v. Chicago Carriage Cab Corp.*, No. 15-1057, 2016 WL 106878, at *2 (7th Cir. Jan. 11, 2016) (citing 820 ILCS 115/2) (emphasis in original).  The IWPCA "does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement." *Enger v. Chicago Carriage Cab Co.*, 77 F. Supp. 3d 712, 717 (N.D. Ill. 2014), *aff'd sub nom*, 2016 WL 106878 (Jan. 11, 2016).  Here, Plaintiffs identify a contract purporting to classify each dancer as an independent contractor.  (R.1, Compl. ¶ 18).  Plaintiffs do not, however, set forth *any* allegations as to the compensation terms of this contract, let alone allege that the contract promised the requested relief.  (*See id.* ¶ 115 seeking "unpaid minimum wages" and "reimbursement of any other deductions and confiscated tips" through the IWPCA).  Plaintiffs here "do not plead that the relevant agreement provided for payment of any sort by Defendants." *Enger*, 77 F. Supp. 3d at 717.  Thus, they have failed to state a claim regarding a lack of minimum wage or overtime pay under the IWPCA.  Accordingly, the Court dismisses Count III without prejudice.

### IV.  RICO Claim (Count IV)

In Count IV, Plaintiffs seek to impose RICO liability on Defendants.  RICO claims are subject to the heightened fraud pleading standard set forth in Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that a plaintiff describe the "who, what, when, where, and how of the fraud." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (citation omitted).  In the context of a RICO claim, the plaintiff must "at a minimum, describe the predicate acts [of

fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud" as well as plead "sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (citations omitted).

Plaintiffs fail to meet this standard. As Defendants observe, Paragraph 118 of the Complaint (1) fails to describe any predicate act triggering RICO liability; (2) fails to state, with any factual detail, the circumstances constituting the fraud; and (3) fails to distinguish among Defendants.[8] In response, Plaintiffs argue that, read as a whole, the Complaint "sufficiently alleged facts to support a pattern of collection of unlawful debt and mail fraud"—which acts constitute RICO violations under 18 U.S.C § 1962. (R.14, Pls.' Response at 7-9; R.20, Pls.' Response at 8-11). Even assuming, however, that Defendants' retention of Plaintiffs' tip "property" constituted unlawful debt collection, and/or that Defendants' filing of Plaintiffs' 1099 forms (instead of W-2 forms) constituted mail fraud,[9] Plaintiffs have not satisfied the pleading requirements of Rule 9(b). Because Plaintiffs have failed to plead their RICO claim with any particularity, the Court dismisses Count IV without prejudice.

---

[8] Count IV, as written, fails to satisfy even the more lenient federal pleading standard requiring "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2). The complexity of a RICO claim "does not give litigants license to plead by means of obfuscation . . . A RICO complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990).

[9] The Court notes Plaintiffs' lack of legal authority for either theory. Indeed, these theories appear to be "simply re-tooled [FLSA] allegations[.]" (R.16, Vajdik Reply Br. at 9). While the Seventh Circuit has not spoken on the issue, it does not appear than an alleged FLSA violation can serve as a predicate act for purposes of RICO liability. *Cf. Jennings*, 910 F.2d at 1438 ("While alleging statutory violations—indeed, while just about incorporating all of the federal and Indiana codes—the allegations do not allege racketeering acts"); *see also* 18 U.S.C. § 1961(1) (defining "racketeering activity").

## V. Retaliatory Discharge (Count V)

In Count V, Plaintiff Virginia Sherwood brings a claim for retaliatory discharge against Defendants under the FLSA, IWPCA, and/or the IMWL. (R.1, Comp. ¶ 124). Ms. Sherwood claims that the Club fired her "for her efforts to exercise her legal rights" to be a statutory employee rather than an independent contractor. (*Id.* ¶ 123).

As an initial matter, the IMWL does not contain an express private right of action for retaliatory discharge. *See* 820 ILCS 105/11(c)-(d). Rather, "it is the duty of the Department of Labor to inquire diligently for any violations of this Act, and to institute the action for penalties herein provided, and to enforce generally the provisions of this Act." *Id.* The Court declines to read an implied civil remedy for retaliation into this statute. *See Skelton*, 382 F. Supp. 2d at 1078 (relying on precedent from the Illinois Appellate Court and reasoning that the criminal penalties provided under the IMWL are sufficient to deter retaliatory activities). The Court dismisses Ms. Sherwood's claim for retaliatory discharge under the IMWL with prejudice.

The IWPCA, by contrast, clarifies that "[a]n employee who has been unlawfully retaliated against shall be entitled to recover . . . in a civil action . . . all legal and equitable relief as may be appropriate." *See* 820 ILCS 115/14(c). Unlawful retaliation under the IWPCA occurs when an employer discharges or otherwise discriminates against an employee for complaining "that he or she has not been paid in accordance with the provisions of this Act." *Id.* Ms. Sherwood does not allege retaliation on the basis of any request for wages under the IWPCA. Nor has she alleged that the Pink Monkey failed to pay her "in accordance with the provisions of [the IWPCA]." As such, Ms. Sherwood's action for retaliatory discharge under the IWPCA fails. *See Barker v. Atl. Pac. Lines*, No. 13 C 1272, 2013 WL 4401382, at *9 (N.D. Ill. Aug. 14, 2013) ("Accordingly because [plaintiff] did not allege retaliation in violation of his request for

16

compensation under the IWPCA, he cannot maintain a claim for IWPCA retaliation"); *Reid v. Neighborhood Assistance Corp. of Am.*, No. 11 C 8683, 2013 WL 1087557, at *9 (N.D. Ill. Mar. 14, 2013), *aff'd*, 749 F.3d 581 (7th Cir. 2014) (dismissing IWPCA retaliatory discharge claim where plaintiffs failed to demonstrate that the employer owed the complained-of overtime pay "pursuant to a contract or agreement").

The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3).[10] To state a claim for retaliation, a plaintiff must show "(1) that he engaged in protected expression; (2) that he suffered an adverse employment action; and (3) that a causal link existed between the protected expression and the adverse action." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012).

---

[10] The Court notes that Section 218c of the FLSA further protects employees against adverse action because the employee "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee . . . reasonably believed to be in violation of any provision of this title[.]" 29 U.S.C. § 218c(a)(5). Section 218c became law in 2010 as part of the Patient Protection and Affordable Care Act ("PPACA"), Pub. Law 111–148, 124 Stat. 119. It is unclear whether "this title," as used therein, refers to Title 29 of the United States Code generally, or to Title I of the PPACA. *See Richter v. Design at Work, LLC*, No. 14-CV-650 RRM LB, 2014 WL 3014972, at *3 (E.D.N.Y. July 3, 2014) (discussing divergent interpretations of Section 218c). Ms. Sherwood requests anti-retaliation relief on the basis of Section 218c. (R.20, Pls.' Response at 11). She has not alleged, however, that she exhausted her administrative remedies before filing this civil action as required under Section 218c(b). *See Richter*, 2014 WL 3014972 at *4. To resolve the instant motion, then, the Court looks to 29 U.S.C. § 215(a)(3) as the basis of Ms. Sherwood's retaliation claim under the FLSA. *Cf. Banks v. Soc'y of St. Vincent De Paul*, No. C15-0304JLR, 2015 WL 6550671, at *6 (W.D. Wash. Oct. 28, 2015) (reasoning that "reading Section 218c to apply to Title 29 at large would swallow the narrower anti-retaliation protections afforded by Section 215, which have been in place since 1938").

Defendants challenge Ms. Sherwood's retaliation allegations as legally insufficient and factually unsound. After examining the record, the Court agrees.

Plaintiffs' pleading attaches a letter, dated February 5, 2015, from Plaintiffs' counsel to Defendant Vajdik. In this letter, Plaintiffs' counsel explains that Ms. Sherwood retained him to "represent her in an employment action" relating to the "misclassification of her as an independent contractor as opposed to an employee[.]" (R.1-1, Feb. 5, 2015 Ltr. attached as Exhibit D to the Compl.). Counsel makes a pre-litigation settlement demand, noting that he "suggested to Ms. Sherwood that she not return to work at the Pink Monkey until this matter is resolved." (*Id.*).

According to Ms. Sherwood, in April 2015—months after her counsel sent the initial demand letter—she advised the Club that she would "return to work" as an employee, not as an independent contractor. (R.1, Compl. ¶ 119; R.1-1, Apr. 24, 2015 Ltr. from Ms. Sherwood to the General Manager of the Pink Monkey and Apr. 29, 2015 Ltr. from Plaintiffs' Counsel to the Pink Monkey, both attached as Exhibit E to the Compl.). The April 24th letter from Ms. Sherwood states, "on the advice of my attorney, since the Club has not been paying me properly, I have not worked [at the Pink Monkey] while negotiations were pending. I now find that I must return to work." (R.1-1, Exhibit E).

On May 1, 2015, an attorney representing Defendant Clinton responded to the April 29th letter, noting that Ms. Sherwood "effectively terminated her independent services agreement without notice on October 27, 2014. Having abandoned her obligations to the Company, we are not interested in and reject your client's proposal [to return to work]." (R.1-1, May 1, 2015 Ltr. from Michael Gurland to Plaintiffs' Counsel, attached as Exhibit F to the Compl.).

18

Ms. Sherwood now contends that her April 24th letter was a "complaint" triggering anti-retaliation protection, that she engaged in protectable expression (asserting her right to be a W-2 employee versus an independent contractor), and that Defendants unlawfully "terminated" her on May 1, 2015. (R.14, Pls.' Response at 9-10; R.20, Pls.' Response at 11-14). Even assuming that she engaged in protected activity, however, Ms. Sherwood has not alleged that a "causal link existed between the protected expression and the adverse action." *Kasten*, 703 F.3d at 972. In particular, the Complaint (¶¶ 119-23) and the exhibits thereto do not support a finding that Ms. Sherwood's April 24 invocation of her alleged right to be a statutory employee was the cause of her alleged discharge on May 1. Rather, the record reflects that Ms. Sherwood voluntarily stopped working at the Pink Monkey in February 2015 pending pre-litigation settlement negotiations. (*See* R-1.1, Exhibit D). Months later, "now [finding] that [she] must return to work," Ms. Sherwood offered to return to the Pink Monkey. (Exhibit E). Pink Monkey rejected that offer. (Exhibit F). Simply put, there is no "discharge" (or otherwise discriminatory conduct) evidenced under these facts to sustain a retaliation claim under FLSA Section 215. Ms. Sherwood offers no authority to support her theory that an employee (or an independent contractor) has the right to return to a job she voluntarily left following the advice of counsel.

For the reasons set forth above, the Court dismisses Ms. Sherwood's retaliation claim under the IMWL with prejudice. The Court dismisses Ms. Sherwood's retaliation claim under the IWPCA and the FLSA without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants both motions to dismiss. (R.10; R.18). The Court dismisses the Complaint without prejudice. If Plaintiffs intend to pursue their claims, they must file an amended complaint consistent with this Memorandum Opinion and Order on or before March 7, 2016.

**Dated:** February 5, 2016

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge