IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| KATHLEEN HUGHES, IMOGEN OLIVER and VIRGINIA SHERWOOD, <br><br> Plaintiffs, <br><br> v. <br><br> SCARLETT'S G.P., INC. d/b/a PINK MONKEY, CLINTON ENTERTAINMENT MANAGEMENT, LLC d/b/a PINK MONKEY, NEW YORK STRIP d/b/a PINK MONKEY, SCARLETT'S L.P. and MARK VAJDIK, <br><br> Defendants. | Case no. 15 CV 5546 <br><br> Hon. Amy J. St. Eve |

**CLINTON ENTERTAINMENT MANAGEMENT, LLC's and SCARLETT L.P.'s MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Clinton Entertainment Management, LLC, dba The Pink Monkey and Scarlett L.P. (hereinafter "Defendants" or the Club"), submit this memorandum in support of their motion to dismiss the First Amended Complaint brought by Kathleen Hughes, Imogen Oliver and Virginia Sherwood ("Plaintiffs" or "Entertainers"). This motion is made pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) based on Plaintiffs' failure to plead sufficient facts to state a claim upon which relief can be granted that Plaintiffs allegedly were neither paid a minimum wage nor paid overtime in accordance with the Fair Labor Standards Act ("FLSA").

**SUMMARY**

On February 5, 2016, this Court dismissed Plaintiffs' original complaint for alleged violations of the FLSA and the parallel Illinois Minimum Wage Law 820 ILCS 501/1 et seq. ("IMWL") and Illinois Wage Payment and Collection Act ("IWPCA"). The complaint was

1

dismissed for several reasons; but, most significantly, it was dismissed because Plaintiffs' allegations manifested their knowledge that the compensation they earned from VIP room dances came from (1) mandatory fees set by the Club, (2) that were paid in full to the Club by the customers, (3) after which a portion of the fees received by the Club were distributed to the dancer by the Club, and (4) that the Entertainers received 1099s showing "nonemployee compensation" that they earned from, at the very least, the VIP room. (Dkt. # 1, ¶¶ 21-22, 30, 36-39).

Plaintiffs' pleading, also acknowledged that the full amount of the VIP fees paid by the customers were included in the Club's gross receipts, although the original complaint was inconsistent on that point. Regardless, as the Court noted in its February 5, 2016 Memorandum Opinion and Order (the "Opinion"), the complaint effectively described the VIP fees as "service charges," and reflected that the Club "may be entitled to [a service charge] credit," (Dkt. # 24 at 8-9), which would -- due to the substantial VIP fees paid to each of the Plaintiffs -- negate any purported minimum wage obligation. These facts, all but one of which are re-alleged in the First Amended Complaint, are fatal to the claims for purported unpaid minimum wages and overtime pay that have been restated in the First Amended Complaint.

The Court also noted that, irrespective of whether the VIP fees would ultimately constitute "service charges" covering any possible minimum wage obligation, the complaint suffered other serious deficiencies that warranted dismissal. Significantly, with respect to the claim for minimum wages, the "Plaintiffs make no allegations as to their actual earnings or the hours worked for which they seek unpaid minimum wages." (Opinion, Dkt. # 24 at 10). As a result, the Court held that "[b]ecause plaintiffs offer[ed] no factual details suggesting a right to relief above the speculative level, their unpaid wage claim fails." *Id.*

With respect to the claim for overtime, the Court similarly found that "again, Plaintiffs offer no factual detail regarding overtime hours worked, monies earned, or monies purportedly due," and on that basis the claim for unpaid overtime wages was also dismissed. *Id.* at 10-11.

Although Plaintiffs now appear to take the position, albeit a false one, that the VIP fees were not included in the Club's gross receipts, Plaintiffs have not cured the defects in the pleading with regard to the amounts they earned, the purported minimum wages they seek, or the purported hours that they worked in the weeks they allegedly worked over 40 hours. Plaintiffs' failure to cure these defects is unsurprising for, as Plaintiffs well know, not one of them ever worked a single week at the Club in excess of 40 hours. Their continued generalized assertion that they worked more than 40 hours a week is a fraud on the Court. (Dkt. # 26 ¶ 58). Defendants reserve the right to seek costs and sanctions in accordance with Rule 11 at the conclusion of this case.[1]

Regardless, for present purposes, Plaintiffs' generalized allegations fall short of the pleading requirements for claims brought under the FLSA, warranting dismissal of the First Amended Complaint. Nowhere in the 37 page First Amended Complaint do any of the Plaintiffs detail their earnings on any given day, or the precise hours that anyone of them worked in any given week during which they purportedly worked over 40 hours. Instead, in broad language parroting the statute, Plaintiffs claim that they were underpaid for the services they sold at the Club. Plaintiffs' First Amended Complaint is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Plaintiffs, however, suffered no harm. They made well in excess of minimum wage,

---

[1] By Letter dated March 15, 2016, Defendants put Plaintiffs on notice of the false allegations and claims in the First Amended Complaint in compliance with defendants' notice obligations under FRCP 11. A copy of the March 15, 2016 Letter is attached as Exhibit A.

and not one of them ever worked more than forty hours in any given week. Plaintiffs have failed to make the required "showing that the[y are] entitled to relief." *Iqbal*, 556 U.S. at 677-78.

Finally, the Retaliatory Discharge Count has not been cured by the single conclusory allegation that was added in response to the Court's Opinion. Indeed, Virginia Sherwood still avers that she voluntarily quit the Club at the direction of her attorney, and then offered to come back if, and only if, she could alter the terms of her employment, and be treated as a W-2 employee, instead of being an independent contractor like all the other dancers. Sherwood otherwise refused to work at the Club. There is no law that provides that an employee or independent contractor has a right to return to a job they voluntarily left, and to do so on terms that the employer has never agreed to. Moreover, even if Sherwood had not voluntarily ceased working at the Club on the advice of her counsel, the allegations of the First Amended Complaint only establish that the Club was unwilling to hire Sherwood as a W-2 employee (or change the terms of her employment), and not that she was fired while working at the Club because she had filed a lawsuit or engaged in some form of protected speech. Sherwood simply was never retaliated against for trying to assert any legal rights that she may, or may not, have.

In the final analysis, the public policy behind the FLSA is to ensure that workers can maintain a minimum standard of living. Plaintiffs, who earned well in excess of minimum wage, seek to twist the law to provide themselves with an undeserved windfall. The First Amended Complaint should be dismissed.

## RELEVANT FACTS

According to the Complaint, each Plaintiff "sign[ed] contracts . . . classify[ing] them as independent contractors." (Dkt # 26 ¶ 24 (2nd paragraph on page 6)).[2] Plaintiffs "worked as

---

[2] The First Amended Complaint contains 12 separate paragraphs each numbered "24". The references to ¶ 24 of the First Amended Complaint, throughout the motion to dismiss, therefore, also

4

female exotic dancer[s] at the Pink Monkey." *Id.* ¶ 4. All of the income that Plaintiffs made at the Club came from performing "exotic table, chair, couch, lap, and/or VIP room dances. (*Id.* ¶ 24 (4th paragraph on page 6)). While Plaintiffs mislabel all such income as "tips," Plaintiffs' allegations establish otherwise.

Plaintiffs effectively admit that the various dance fees were non-discretionary fees set by the Club. (*Id.* ¶ 24 at page 7; Dkt # 26-1 at 5). It is undisputed that for "Cabana Dances" the client pays a mandatory $30 fee. That fee is split between the Club and the Entertainer, with the Club receiving $5 and the Entertainer receiving $25 of each Cabana Dance fee collected. For a patron to receive a private dance in the VIP room, the patron must pay the Club a mandatory fee based on the amount of time the patron spends in the VIP room. A fee of $200 is paid by the patron for 15 minutes in the VIP room, or $220 if paying with credit; a fee of $350 is paid by the patron for 30 minutes in the VIP room, or $385 if paying with credit; and a fee of $600 is paid by the patron for 60 minutes in the VIP room, or $660 if paying with credit. (Dkt. # 26-1 at 5).

It is also undisputed that the mandatory VIP fees paid by the patrons are split between the Club and the Entertainer as follows: With respect to a 15 Minute VIP service, the Entertainer receives $120 (where the patron pays cash) or $108 (where the patron pays credit). With respect to a 30 Minute VIP service, the Entertainer receives $250 (where the patron pays cash), or $225 (where the patron pays credit). With respect to a 60 minute VIP service, the Entertainer receives $420 (where the patron pays cash) or $378 (where the patron pays credit). *Id.*

Plaintiffs admit, with respect to the non-discretionary VIP fee, that the entire fee is paid directly to the Club. (Dkt. # 26 ¶ 24 at page 7, ¶ 37). While Plaintiff now appears to deny that

---

provide page numbers and, if necessary, detail which particular paragraph on such page is being referenced.

5

the full VIP fee is taken into the Club's gross receipts (*Id.* ¶ 24 at page 9),[3] the First Amended Complaint evidences distributions to the Plaintiffs from the Club's gross receipts in the form of "non-employee compensation." Dkt. 26-1, Ex. B at 5. Plaintiff does specifically and clearly allege, with respect to "table [Cabana] dance[s]" that the "entire sum that a dancer receives from the patron . . . is not . . . taken into [defendants] gross receipts." *Id.* ¶ 41.

Nowhere in the 34-page complaint do Plaintiffs detail any given week in which one of them in fact worked over 40 hours and was not paid overtime for such week. Nor do any of the Plaintiffs provide any details regarding the amounts they earned in non-discretionary VIP fees. Plaintiffs nevertheless allege in a nonspecific, conclusory fashion, with respect to overtime, that "[a]t such times as Plaintiffs worked more than forty hours in a week (and each did), they were not paid time and a half." *Id.* ¶ 58. Plaintiffs, however, effectively admit that they have no records supporting their conclusory claim of having worked weeks in excess of forty hours in certain unspecified weeks. *Id.* ¶ 41 (". . . . Plaintiffs will need discovery to determine how often they were not paid overtime").

## ARGUMENT

By mischaracterizing the mandatory dance fees as tips and falsely claiming that they worked some unspecified forty plus hour week, Plaintiffs draw a vague and misleading picture of their compensation in the hopes of bringing a class action for unpaid wages and overtime.

---

[3] Plaintiffs do not expressly state that the VIP fees were not included in the Club's gross receipts, although that appears to be their intent. Rather, Plaintiffs refer generally to "dances" which would include services in addition to VIP dances, such as Stage dances and Cabana dances. Specifically, Plaintiffs allege that "the full amount a Plaintiff is given by patrons in relation to the dances she performs are not taken into Defendants' gross receipts . . . ." (Dkt. # 26 ¶ 24 at page 9). Certain items, including without limitation, actual tips paid on top of the VIP fees as well as tips from performing Stage dances, were not included in the Club's gross receipts at any time. Thus, because of Plaintiffs' vague reference to "dances," the allegation about the Club's gross receipts is, with respect to the VIP fees, at best ambiguous, and, at worst, misleading.

Mandatory fees, however, are not tips as long as they are included in the employer's gross receipts. The VIP fees that Plaintiffs allege they received undermine their claim for unpaid wages. Regardless, as detailed below, Plaintiffs have once again failed to set forth factual detail establishing a plausible case for unpaid minimum wages. Furthermore, "[a] plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Landers v. Quality Communications, Inc., et al.,* 771 F.3d 638 (9th Cir. 2014), cert denied, 135 S.Ct. 1845 (April 20, 2015). Plaintiffs have not met their burden and the First Amended Complaint should be dismissed with prejudice.

**I.      The Standard on a Motion to Dismiss an FLSA Claim**

A defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) for a plaintiff's "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (quotation omitted). Dismissal is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Moreover, the alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 555. A complaint fails to state a claim upon which relief may be granted when it lacks "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

7

> the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 129 S.Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, the complaint must be dismissed." *Twombly,* 550 U.S. at 570; *accord Iqbal,* 129 S.Ct. at 1950-51.

Here, the First Amended Complaint must be dismissed because Plaintiffs have not provided any detail regarding the days or hours that they worked, nor have they accounted for the fees they received, in any single week, such that the Court could determine if a plausible case for unpaid wages or overtime exists even assuming that Plaintiffs were misclassified as independent contractors.

### A. Plaintiffs' Allegations Do Not Support Claims for Unpaid Minimum Wages Under the FLSA, the IMWL or the IWPCA.

The First Amended Complaint establishes that the VIP fees should be treated as wages under the FLSA, such that Plaintiffs did in fact obtain more than a minimum wage. Specifically, as with the original complaint the First Amended Complaint's allegations actually negate any violation of the FLSA. Plaintiffs admit that they were directly compensated by the defendants (and not the customers) for dances performed in the VIP room. (Dkt # 26, Complaint ¶ 24). Plaintiffs further admit that the fees charged patrons are a fixed fee set by the defendants. (*Id*. ¶ 24, and Ex. A (Dkt. # 26-1) at 5). And, although Plaintiffs now appear to claim that the VIP fees were not taken into the Club's gross receipts (Dkt. # 26 ¶ 24), the allegations of the First Amended Complaint as detailed above, including the fact that Plaintiffs received 1099s for distributions of "nonemployee compensation" (Dkt. # 26-1, Ex. B), strongly suggest otherwise.

8

Accordingly, as a matter of law, based on the allegations of the First Amended Complaint, the amounts paid to the Plaintiffs from the mandatory VIP fees collected by the Club are not tips, but rather service charges which count towards any minimum wage obligations that might conceivably exist under the FLSA. *Mechmet v. Four Seasons Hotels, Ltd.*, 639 F. Supp. 330, 338 (N.D. Ill. 1986) *aff'd,* 825 F.2d 1173 (7th Cir. 1987) (concluding that a nondiscretionary banquet service charge was more akin to a commission that a tip where customers paid it directly to the employer-hotel). *See also*, *Reich v. ABC/York-Estes Corp.,* 1997 WL 264379 at 5-6 (N.D. Ill 1997) (non-discretionary service charge paid directly to the employer is more akin to a commission than a tip, and employer may receive a minimum wage credit for the portion of the service charge paid to the employee under the FLSA when the service charge is part of the employer's gross receipts.); *Matson v. 7455, Inc.,* 2000 WL 1132110, at *6 (D. Or. Jan. 14, 2000) (even if the dancer was an employee, the fees collected for dances were not "tips" but were "service charges," which would offset any minimum wage obligation that the defendant had to the plaintiff if the FLSA applied).

Regardless, Plaintiffs have not met their burden of pleading sufficient facts to state a claim for unpaid minimum wages. *See, e.g., Kwam Bom Cho v. GCR Corp.*, 2013 WL 675066 at *2-*3 (N.D. Ill. 2013) (holding that pleading deficiencies in FLSA claim, including plaintiffs' failure to plead when they worked for defendant, how many hours worked or the applicable rate of pay, required dismissal under Fed. R. Civ. P. 12(b)(6)); *Wilson v. Pioneer Concepts, Inc.*, 2011 WL 3950892 at *2-*3 (N.D. Ill. 2011) (dismissing FLSA claims where the plaintiff failed to plead particulars of FLSA claim and noting that "[n]umerous courts have held such conclusory allegations of FLSA violations to be insufficient" and collecting cases on that score); *White v. Classic Dining Acquisition Corp.*, 2012 WL 1252589, *4-6 (S.D. Ind., Apr. 13, 2012) (holding

9

that Plaintiff's failure to include the applicable rate of pay and amount of minimum wages allegedly unpaid required dismissal of FLSA claim). Indeed, Plaintiffs have provided no detail whatsoever regarding the hours they worked and the compensation they received and have, therefore, failed to state a plausible case for unpaid minimum wages.

> B. **Plaintiffs Plead Insufficient Facts to Support Claims for Overtime Under the FLSA, the IMWL or the IWPCA.**

"[A]n employee who brings suit for unpaid overtime compensation has the burden of proving that she performed work for which she was not properly compensated." *Gatto v. Mortgage Specialists of Illinois, Inc.,* 442 F. Supp. 2d 529, 535 (N.D. Ill. 2006). To allege a plausible claim under the FLSA for overtime, a plaintiff must at a minimum specify a given week in which they were not properly compensated, and provide sufficient facts for the court to determine if the allegations will give rise to an entitlement to relief. *See, Landers v. Quality Communications, Inc., et al.,* 771 F.3d at 641, 645, compiling cases.

In *Landers,* the plaintiff brought an FLSA action alleging that he was not paid minimum wage and was subjected to a "piece work" "no overtime wage system," whereby he worked in excess of forty hours per week without being compensated for his overtime. *Id.* at 640. The district court determined that the complaint failed to state a plausible claim for relief as it "did not make any factual allegations providing an approximation of the overtime hours worked, plaintiff's hourly wage, or the amount of unpaid overtime wages . . . ." *Id.* The Ninth Circuit upheld the dismissal and found, consistent with the majority of other circuits that have addressed this issue "that in order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given work week without being compensated for overtime hours worked during that work week." *Id.* at 645. Like *Landers*, this

10

case merely presents "generalized allegations asserting violations of the minimum wage and overtime provisions of the FLSA." *Id.* at 646. Such generalities are simply not enough.

*Landers* is consistent with the majority of circuit courts that have examined this issue. *See, accord*, *Pruell v. Caritas Christi,* 678 F.3d 10, 13-14 (1st Cir. 2012) (plaintiffs' allegation that they have "regularly worked hours over forty in a week and were not compensated for such time" was insufficient in that the complaint lacked examples of unpaid time or estimates of the amounts owed, warranting dismissal of the complaint); *Dejesus v. HF Management Services, LLC,* 726 F.3d 85-89 (2nd Cir. 2013) (plaintiff's allegation that in "some or all weeks she worked more than forty hours a week without being paid 1.5 time her rate of compensation[,]" failed to state a plausible claim because she did not allege overtime in a given workweek.") (citations and internal quotations omitted). *See also, Davis v. Abington Memorial Hospital,* 765 F.3d 236 (3d Cir. 2014) (same).

While *there* is a split in authority regarding the level of detail required, courts in this circuit have found that where, as here, the complaint has a dearth of factual support regarding the claims of unpaid wages or overtime, the complaint warrants dismissal. *See, e.g. Brown v. Club Assist Road Serv. U.S. Inc.,* 12 CV 5710, 2013 WL 5304100, at *6 (N.D. Ill. Sept. 19, 2013) (Dow, J.); *Butler v. E. Lake Mgmt. Group, Inc.,* 10-CV-6652, 2012 WL 2115518, at *5 (N.D. Ill., June 11, 2012) (Dow, J.); *Wilson v. Pioneer Concepts, Inc.,* No. 11-CV-2353, 2011 WL 3950892, at *2-3 (N.D. Ill. Sept. 1, 2011) (Darrah, J.); *Silver v. Townstone Financial, Inc. et al.,* No. 14-CV-1938, 2015 WL 1259507 (N.D. Ill., March 17, 2015) (Coleman, J.); (Dkt. # 24 at 10-11).

Here, in the absence of the identification of even one week in which Hughes, Rooney or Sherwood worked in excess of 40 hours and was not paid overtime, or any factual detail regarding their actual earnings, the FLSA counts are insufficient and should be dismissed.

## II. The State Law Claims Fail for the Same Reason that the FLSA Claims Fail.

In Count II, Plaintiffs allege a violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/3(d). The same analysis that applies to the FLSA claims generally applies to the IMWL. *Knapp v. City of Markham*, No. 10 C 03450, 2011 WL 3489788, at *8 (N.D. Ill. Aug. 9, 2011) ("Claims brought under the FLSA and IMWL are evaluated using the same general analysis."); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1074 (N.D. Ill. 2005) *amended,* No. 03 C 9009, 2005 WL 2649190 (N.D. Ill. Oct. 11, 2005) ("The IMWL parallels the FLSA, and thus the same analysis applies to claims made under the IMWL and FLSA."). Therefore, for the same reasons that Count I of the First Amended Complaint fails to allege a claim under the FLSA, Count II under the IMWL also fails.

Plaintiffs also attempt to allege a violation of the Illinois Wage Payment and Collection Act ("IWPCA") in Count III. 820 ILCS 115/2. The IWPCA merely requires an employer to comply with his agreement with the employee. *See Enger v. Chicago Carriage Cab Co.*, 77 F. Supp. 3d 712, 716-17 (N.D. Ill. 2014). There, the court stated:

> But while Plaintiffs have successfully alleged an agreement with Defendants, they still fail to state a claim under the IWPCA because the agreement did not *717 provide for the payment of any wages to Plaintiffs by Defendants. The IWPCA 'does not grant any independent right to payment of wages and benefits; instead it only enforces the terms of an existing contract or agreement.' *Wharton,* 912 F.Supp.2d at 658. Here, Plaintiffs do not plead that the relevant agreement provided for payment of any sort by Defendants. Thus, their claims regarding a lack of minimum wage or overtime pay must fail under the IWPCA.

77 F. Supp. 3d 712 at 716-17.

Plaintiffs seeking relief under the IWPCA also must identify the contract terms that they seek to enforce. Courts in this jurisdiction have readily dismissed IWPCA claims where the complaint fails to allege that the employee was owed compensation pursuant to a specific employment contract or agreement. *See, e.g., Brand v. Comcast Corp.*, 2012 WL 5845639, at *2-5 (N.D. Ill. 2012); *Smith v. C.H. James Restaurant Holdings, LLC*, 2012 WL 255806, at * 2 (N.D. Ill. 2012); *Palmer v. Great Dane Trailers*, 2005 WL 1528255, at *4 (N.D. Ill. 2005).

Here, Plaintiffs do not seek to enforce their independent contractor agreement. Rather the Plaintiffs seek the same relief under the IWPCA that they believe they are entitled to under the FLSA and the IMWL.

Moreover, the IWPCA claim contained in Count III of the First Amended Complaint is a verbatim copy of the IWPCA claim that was originally dismissed as insufficient by the Court in its Opinion and Order dated February 5, 2016. (Dkt. # 24 at 14). Plaintiffs' failure to change a word of their insufficient claim, despite clear direction from the Court, mandates dismissal of this Count with prejudice.

**III. Virginia Sherwood Has Not Stated A Claim for Retaliatory Discharge.**

Count IV is for retaliatory discharge solely on behalf of Plaintiff Virginia Sherwood brought pursuant to the IWPCA. The claim fails under the IWPCA for the same reasons this Court dismissed the claim on February 5, 2016. (Dkt. # 24 at 16-19). As detailed in the Court's Opinion, "[u]nlawful retaliation under the IWPCA occurs when an employer discharges or otherwise discriminates against an employee for complaining 'that he or she has not been paid in accordance with the provisions of this Act.'" (Dkt. 24 at 16). The Court dismissed the retaliatory discharge claim in the original complaint because Sherwood had "not alleged retaliation on the basis of any request for wages under the IWPCA. *Id.* To try and cure this

defect, Plaintiffs added a conclusory allegation to the effect that, "[i]n demanding that she be paid a minimum wage and be treated as an employee, rather than an independent contractor Sherwood was engaging in a protected activity." (Dkt. # 26 ¶ 120). Sherwood's factual basis for this allegation is her letter dated April 24, 2015 wherein she demands to return to work "as an employee, not an independent contractor;" (Dkt. # 26-1, Ex. E); and the response from the Club's counsel indicating that she had "terminated her independent services agreement . . . [and that the Club was] not interested in and reject[ed] her proposal." (Dkt. # 26-1, Ex. F). The factual basis set forth in the First Amended Complaint is word-for-word the same factual basis that was alleged in the original complaint, and that this Court has already found to be insufficient to sustain a retaliatory discharge claim under the IWPCA.

As before, Sherwood's claim of retaliatory discharge fails for two reasons. First, Sherwood admits that she ceased working at the Club as early as January 23, 2015, well before the Club rejected her proposal to work at the Club as a W-2 employee rather than as an independent contractor. *Id.* ¶ 118. Sherwood further alleged and admitted that she stopped working at the Club, not as a result of any adverse action, but rather did so "on the advice of [her] attorney." (Dkt. # 26-1, Ex. E). Because Sherwood stopped working months before seeking employment at the Club as a W-2 employee, it cannot be said that she was terminated for "engaging in a protected activity."

Second, because Sherwood sought to create a new contract whereby she would work, if and only if, she was treated as a W-2 employee (Dkt. # 26 ¶ 116), it cannot be said that that employment relationship was terminated by the Club as it was never agreed to in the first place. Sherwood simply was not working at the Club in any capacity when the Club rejected her proposal to start working at the Club in a new capacity. Put differently, Sherwood was not

seeking to work at the Club (on the terms that were offered to all dancers) while asserting her purported legal rights. Rather, she refused to work at the Club unless she was allowed to unilaterally change the terms of her employment. Sherwood, and no one else is responsible for the fact that she is not now dancing at the Club.

## CONCLUSION

Based on the foregoing, the First Amended Complaint fails as a matter of law. Because the First Amended Complaint is virtually identical to the complaint that was previously dismissed, and because Plaintiffs have failed to cure the defects in their pleading, the First Amended Complaint should now be dismissed with prejudice.

Dated: April 15, 2016	Respectfully submitted,

/s/ Michael Z. Gurland

On behalf of Defendants Clinton Entertainment Management, LLC and Scarletts, L.P.

Michael Z. Gurland
The Gurland Law Firm
414 North Clay Street,
Hinsdale, IL 60521
(312) 420-8812
mzg@gurlandlawfirm.com
ARDC # 6274400